1  TOWNSEND AND TOWNSEND AND CREW LLP
   JAMES G. GILLILAND, JR.  (State Bar No. 107988)
2  jggilliland@townsend.com
   TIMOTHY R. CAHN  (State Bar No. 162136)
3  trcahn@townsend.com
   MEGAN M. CHUNG  (State Bar No. 232044)
4  mmchung@townsend.com
   Two Embarcadero Center, 8th Floor
5  San Francisco, CA  94111
   Telephone:  (415) 576-0200
6  Facsimile:  (415) 576-0300

7  Attorneys for Defendant
   SONY COMPUTER ENTERTAINMENT EUROPE LTD.

8

9                    UNITED STATES DISTRICT COURT

10               SOUTHERN DISTRICT OF CALIFORNIA

11

12  BUZZTIME ENTERTAINMENT, INC. and          Case No.  08 CV 0122 W LSP
    NTN BUZZTIME, INC.,
13                                            **SONY COMPUTER ENTERTAINMENT
                                              EUROPE LTD.'S REPLY IN SUPPORT
14          Plaintiffs,                       OF ITS MOTION TO DISMISS FOR
                                              LACK OF PERSONAL JURISDICTION
15      v.                                    AND INSUFFICIENCY OF PROCESS**

16  SONY COMPUTER ENTERTAINMENT
    EUROPE LTD. and SONY COMPUTER
17  ENTERTAINMENT AMERICA INC.,               **NO ORAL ARGUMENT PURSUANT
                                              TO LOCAL RULE**
18          Defendants.
                                              Date:   June 23, 2008
19  ────────────────────────────             Time:   10:00 a.m.
                                                      Courtroom 7, 3rd Floor
20  SONY COMPUTER ENTERTAINMENT                       Hon. Thomas J. Whelan
    AMERICA INC.,
21
            Counter-Complainant,
22
        v.
23
    BUZZTIME ENTERTAINMENT, INC. and
24  NTN BUZZTIME, INC.,

25          Counter-Defendants.

26

27

28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................ 1

II.     PLAINTIFFS FAILED TO MEET THEIR BURDEN TO ESTABLISH
        SPECIFIC PERSONAL JURISDICTION ................................................................. 2

        A.      Plaintiffs Fail To Show "Purposeful Availment," Which Requires
                More Than The Mere Foreseeability Of In-State Harm Stemming
                From Plaintiffs' Location In California................................................................. 2

                1.      Plaintiffs Fail To Show Intentional Acts By SCEE Expressly
                        Aimed At California ................................................................................. 3

                2.      Plaintiffs Fail To Establish That The Brunt Of The Harm
                        Occurred In California Or, If So, That SCEE Had Knowledge
                        Of Such Harm ........................................................................................... 7

        B.      Plaintiffs Fail To Show The Required Nexus Between Any Forum
                Contact By SCEE And Plaintiffs' Trademark Claims ..................................... 8

        C.      Asserting Jurisdiction Over SCEE Would Be Unreasonable ........................... 8

        D.      Plaintiffs' Contention That SCEE Is A Necessary Party Is Irrelevant
                and Wrong ......................................................................................................... 9

III.    SERVICE WAS IMPROPER UNDER THE UNITED KINGDOM'S
        SERVICE LAWS ...................................................................................................... 9

IV.     CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

Page

**Cases**

*Ameritec Corp. v. Ameritech Corp.,*
   No. CV 86-0951, 1986 WL 10702, 230 U.S.P.Q. 225 (C.D. Cal. Apr. 29, 1986) ........................... 4

*Asahi Metal Indus. Co. v. Superior Court,*
   480 U.S. 102 (1987) ................................................................................................................. 9

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,*
   223 F.3d 1082 (9th Cir. 2000) ................................................................................................ 5

*Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.,*
   289 F.3d 589 (9th Cir. 2002) .................................................................................................. 6

*Callaway Golf Corp. v. Royal Canadian Golf Ass'n,*
   125 F. Supp. 2d 1194 (C.D. Cal. 2000) ............................................................................. 3, 8

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,*
   334 F.3d 390 (4th Cir. 2003) .................................................................................................. 9

*Core-Vent Corp. v. Nobel Indus. AB,*
   11 F.3d 1482 (9th Cir. 1993) .................................................................................................. 8

*Cybersell Inc. v. Cybersell, Inc.,*
   130 F.3d 414 (9th Cir. 1997) ................................................................................................. 4

*Doe v. American Nat'l Red Cross,*
   112 F. 3d 1048 (9th Cir. 1997) ............................................................................................... 8

*Floyd J. Harkness Co. v. Amezcua,*
   60 Cal. App. 3d 687 (1976) ................................................................................................... 9

*H.M. Greenspun v. Del E. Webb Corp.,*
   634 F.2d 1204 (9th Cir. 1980) ........................................................................................... 2, 5

*In re Wella A.G.,*
   787 F.2d 1549 (Fed. Cir. 1986) ............................................................................................. 6

*Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. P'ship,*
   34 F.3d 410 (7th Cir. 1994) .................................................................................................... 7

*Jazini v. Nissan Motor Co.,*
   148 F.3d 181 (2d Cir. 1998) ............................................................................................... 2, 5

*Markey v. Kudelski,*
   No. 06-CV-1300 W (RBB), 2007 WL 1110787 (S.D. Cal. Apr. 3, 2007) ........................... 2, 5, 6

*Mattel, Inc. v. MCA Records, Inc.,*
   28 F. Supp. 2d 1120 (C.D. Cal. 1998) .................................................................................. 5

**TABLE OF AUTHORITIES (con't)**

Page

*Metropolitan Life Ins. Co. v. Neaves,*
  912 F.2d 1062 (9th Cir. 1990) ................................................................. 5

*Miller v. Glenn Miller Prods.,*
  318 F. Supp. 2d 923 (C.D. Cal. 2004) ...................................................... 6

*Nissan Motor Co. v. Nissan Computer Corp.,*
  89 F. Supp. 2d 1154 (C.D. Cal. 2000) ................................................... 2, 3

*Oberlin v. Marlin Am. Corp.,*
  596 F.2d 1322 (7th Cir. 1979) ................................................................. 6

*Panavision Int'l, L.P. v. Toeppen,*
  141 F.3d 1316 (9th Cir. 1998) ........................................................ 3, 4, 7, 8

*Pebble Beach Co. v. Caddy,*
  453 F.3d 1151 (9th Cir. 2006) ........................................................ 3, 4, 5, 9

*Rano v. Sipa Press, Inc.,*
  987 F.2d 580 (9th Cir.1993) .................................................................... 7

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
  148 F.3d 1355 (Fed. Cir. 1998) ............................................................... 7

*Rio Props., Inc. v. Rio Int'l Interlink,*
  284 F.3d 1007 (9th Cir. 2000) ................................................................. 5

*Schwarzenegger v. Fred Martin Motor Co.,*
  374 F.3d 797 (9th Cir. 2004) ................................................................... 3

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.,*
  932 F.2d 1113 (5th Cir. 1991) ................................................................. 6

*Taffy Original Designs, Inc. v. Taffy's Inc.,*
  161 U.S.P.Q. 707 (N.D. Ill. 1966) ........................................................... 6

*Travelers Cas. & Sur. Co. of Am. v. Telstar Constr. Co.,*
  252 F. Supp. 2d 917 (D. Ariz. 2003) ....................................................... 6

*Williams v. Canon, Inc.,*
  432 F. Supp. 376 (C.D. Cal. 1977) .......................................................... 4

*World-Wide Volkswagen Corp. v. Woodson,*
  444 U.S. 286 (1980) ............................................................................... 7

**Statute**

15 U.S.C. §1055 ..................................................................................... 1

1              **TABLE OF AUTHORITIES (con't)**

2                                                                                   Page

3    **Federal Rules**

4    Federal Rule of Civil Procedure 4(f) ............................................................... 10

5    Federal Rule of Civil Procedure 4(h)(2) ......................................................... 10

6    Federal Rule of Civil Procedure 44.1 .............................................................. 10

7    Federal Rule of Evidence 701 ............................................................................ 6

8    Federal Rule of Evidence 802 ............................................................................ 6

9    Federal Rule of Evidence 805 ............................................................................ 6

10   **Other Authorities**

11   Article 10 of the Hague Convention ................................................................ 10

12   *Moore's Fed. Practice* §12.31[8] at p. 12-60 .................................................. 9

13   U.K. Civil Procedural Rule 6.4.4 & Service Practice Direction 6.2(1) ............. 10

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Plaintiffs' opposition brief fails to confront the principle that a foreign company's application for registration of a trademark used on goods sold solely by a separate U.S. corporation does not subject the foreign company to personal jurisdiction here.[1]  Plaintiffs try in vain to turn SCEE's trademark filings for "BUZZ!" into an act "expressly aimed" at California for jurisdictional purposes simply because Plaintiffs are located in California.  However, under all the relevant Ninth Circuit authorities, that a resident corporate party is allegedly harmed in California by foreign conduct of a foreign company is not sufficient to confer jurisdiction over the foreign company.  Otherwise, a California plaintiff *always* could sue a foreign defendant on that basis.  There must be something more, and Plaintiffs have not established it here.

Plaintiffs erroneously contend that *SCEA*'s selling and marketing activities are somehow undertaken "on behalf" of SCEE, but ignore all SCEE's evidence to the contrary.  Moreover, Plaintiffs do not even address the legal authorities SCEE cites to support that only an *alter ego's* contacts can be imputed to a foreign defendant.  Plaintiffs speculate that perhaps SCEE was engaged in a "coordinated plan" with SCEA to market and sell the allegedly infringing goods in California and perhaps "sent promotional" items here, but such speculation is groundless and flatly contradicted by the evidence.  Plaintiffs further hypothesize that SCEE has a trademark duty to exercise some degree of quality control, but trademark law relaxes such a duty between corporate affiliates and, in any event, the duty shows nothing about SCEE's contacts with California.

Perhaps to secure some sympathy for its positions, Plaintiffs curiously argue that SCEE is *necessary* to Plaintiffs' infringement claims, even though SCEE indisputably sold no allegedly infringing video games in the United States.  If SCEE indeed was an indispensable party, the result would be dismissal of Plaintiffs' claims, not a finding of personal jurisdiction over SCEE.  Fed. R. Civ. P. 19.  In truth, the presence in the case of SCEA, the only party engaging in U.S. sales, ensures

---

[1]  Indeed, U.S. law expressly contemplates that foreign companies will register trademarks by relying on a related company's use in the United States. 15 U.S.C. §1055.  Thus, contrary to Plaintiffs' speculative statement in its Introduction, a foreign company's trademark application in the United States. does not concede *its* use in the United States when, as here, the applicant is relying on a related party's use.

1    Plaintiffs' ability to seek all the relief on their infringement claims to which they believe they are

2    entitled.  Not only is SCEE not necessary, it is superfluous as a party to Plaintiffs' infringement

3    claims.  Indeed, it is perplexing why Plaintiffs desire to keep SCEE in the case at all, except perhaps to

4    impose on this infringement lawsuit Plaintiffs' request to cancel SCEE's trademark registrations once

5    they register.  Plaintiffs, however, could seek cancellation and submit a trademark objection or

6    opposition directly to the USPTO.  Their unwillingness to do so is no justification for subjecting a

7    foreign party to an infringement suit where the party lacks minimum contacts.

8

9    II.    **PLAINTIFFS FAILED TO MEET THEIR BURDEN TO ESTABLISH SPECIFIC PERSONAL JURISDICTION**[2]

10        Though acknowledging that they bear the burden of proof (Opp. at 4), Plaintiffs fail to show

11    facts to support any of the three elements for specific jurisdiction:  (1) that SCEE purposefully availed

12    itself of a California forum under the proper Ninth Circuit "effects" test; (2) that Plaintiffs' claims

13    arise out of or are related to forum contacts; and (3) that exercise of jurisdiction is reasonable.  Under

14    each of these elements, Plaintiffs fail to demonstrate, as they must, "facts that, if true, would support

15    jurisdiction over the defendant."  *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998);

16    *H.M. Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1208 n.5 (9th Cir. 1980).  In place of facts,

17    Plaintiffs engage in unfounded speculation, which is an improper basis for imposing jurisdiction over

18    a non-U.S. company.  *See Markey v. Kudelski*, No. 06-CV-1300 W (RBB), 2007 WL 1110787, at *2-3

19    (S.D. Cal. Apr. 3, 2007) (plaintiffs must show "particular facts which establish the necessary ties

20    between the defendant and the forum state").

21        A.    **Plaintiffs Fail To Show "Purposeful Availment," Which Requires More Than The Mere Foreseeability Of In-State Harm Stemming From Plaintiffs' Location In California**

22

23        Plaintiffs acknowledged that, to establish "purposeful availment" under the Ninth Circuit's

24    "effects" test, they must show SCEE committed (1) intentional acts (2) expressly aimed at California

25    _____

26    [2]  Plaintiffs did not offer any arguments concerning general jurisdiction; nor did they rebut any of SCEE's arguments and evidence.  (*See* Opp. at 5.)  Hence, they tacitly concede, as they must, that

27    there is no general jurisdiction over SCEE.  *See Nissan Motor Co. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154, 1158 (C.D. Cal. 2000) (holding the plaintiffs failed to establish a basis for general

28    jurisdiction when they did not make any arguments).

— 2 —

1   (3) which cause harm, the brunt of which is suffered in the forum state. (*See* Opp. at 6:17-19.)

2   Plaintiffs erroneously suggest, however, that these three elements collapse into one element of

3   foreseeability based on harm stemming from Plaintiffs' location in the forum state and cite *Panavision*

4   and *Nissan*. (*See* Opp. at 6:24-7:7.)  Neither case, however, stands for the radical extension of

5   personal jurisdiction advanced by Plaintiffs here. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316,

6   1319, 1322 (9th Cir. 1998) (defendant demanded money as part of an extortion scheme in a letter

7   mailed to California); *Nissan*, 89 F. Supp. 2d at 1160 (the defendant solicited business from five

8   companies in forum state).  Plaintiffs must show intentional acts aimed at California, not merely

9   "effects" here by virtue of Plaintiffs' residence.  Merely knowing that a corporate party may be

10  located in California "does not fulfill the effects test." *Callaway Golf Corp. v. Royal Canadian Golf*

11  *Ass'n*, 125 F. Supp. 2d 1194, 1200 (C.D. Cal. 2000); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158

12  (9th Cir. 2006) (knowledge that a plaintiff resides in California is not an act "expressly aimed at

13  California").  The Ninth Circuit recently warned against such a broad extension of personal

14  jurisdiction:

15      [W]e have warned courts not to focus too narrowly on the test's third prong – the
        effects prong – holding that 'something more' is needed in addition to a mere
16      foreseeable effect.  Specifically we have stated,

17          "Subsequent cases have struggled somewhat with *Calder's* import,
            recognizing that the case cannot stand for the broad proposition that a foreign
18          act with foreseeable effects in the forum state will always give rise to specific
            jurisdiction.  We have said that there must be 'something more' . . . .  We
19          conclude that 'something more' is what the Supreme Court described as
            'express aiming' at the forum state."

20  *Pebble Beach*, 453 F.3d at 1156 (emphases added); *see also Schwarzenegger v. Fred Martin Motor*

21  *Co.*, 374 F.3d 797, 804-05 (9th Cir. 2004); *Callaway*, 125 F. Supp. 2d at 1200.

22
          1.    **Plaintiffs Fail To Show Intentional Acts By SCEE Expressly Aimed**
23              **At California**

24          Because the record is devoid of any in-state acts by SCEE, Plaintiffs rely solely on alleged

25  foreign actions with supposed effects in California.  None of these, however, satisfies the requirement

26  that SCEE purposefully direct its conduct at California or avail itself of California's protections.

27  Contrary to Plaintiffs' argument, they may not rely on SCEE's status as the trademark owner to

28  establish purposeful availment of California.  As discussed in SCEE's opening brief, the law is clear

– 3 –

1    that trademark ownership is not a business activity expressly aimed at a particular jurisdiction. (SCEE

2    Opening Br. at 9-11.) Plaintiffs attempt unsuccessfully to distinguish *Williams v. Canon, Inc.*, 432 F.

3    Supp. 376 (C.D. Cal. 1977), on the irrelevant ground that it was an antitrust case,[3] when in fact

4    *Williams* is especially germane here. Even though the defendant in *Williams* had 23 trademark

5    licensees actively using the trademarks in all states including California, this was held not to constitute

6    express aiming at California. The *Williams* court held that defendant Canon's status as a trademark

7    owner and licensor "does not establish that Canon has purposefully availed itself of the privilege of

8    conducting activities within the forum, thus invoking the benefits and protections of its laws."

9    *Williams*, 432 F. Supp. at 380.

10         Moreover, by filing trademark applications with the USPTO, SCEE has not expressly aimed

11   any act at California. The Ninth Circuit has repeatedly stated, in an analogous situation, that domain

12   name registration and passive websites do not constitute express aiming. *See Pebble Beach*, 453 F.3d

13   at 1157; *Panavision*, 141 F.3d at 1321-22; *Cybersell Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th

14   Cir. 1997). Like domain name registration and passive websites, trademark registration and

15   ownership is a passive act that does not constitute express aiming. Moreover, SCEE, by filing ITU

16   applications for "BUZZ!" cannot be said to have been taking aim at Plaintiffs as owners of

17   registrations for "buzztime." There are literally hundreds of trademark applications and registrations

18   at the USPTO that incorporate the term "buzz" and there is no logical reason why SCEE's act of filing

19   at the USPTO should have brought to mind Plaintiffs or their "buzztime" mark. Further, the ITU

20   applications here were filed at the USPTO, not in California. Nothing in the ITU application

21   references California. The specimen of use shows that the product was made for use in the United

22   States. (Abrams Decl. Ex. 2 (marked with U.S. phone number and "NTSC U/C"); *see also* Andall

23   Decl. ¶ 4.) There can be no dispute that SCEE's trademark filings are *not* the type of acts the Ninth

---

24

25   [3]  The *Williams* rationale has been applied in a trademark infringement case. *Ameritec Corp. v. Ameritech Corp.*, No. CV 86-0951, 1986 WL 10702, at *6, 230 U.S.P.Q. 225 (C.D. Cal. Apr. 29, 1986). The court rejected the plaintiff's argument that the foreign parent and sister corporations "purposefully availed" themselves by interjecting the "Ameritech" mark into commerce. *Id.* ("the Court concludes that even though Ameritech's trademark is a property right and Ameritec could enforce this right in this forum, advertisement in national publications does not establish, without more, that the moving defendants have purposefully availed itself").

26

27

28

1   Circuit has found to be "express aiming." *See Panavision*, 141 F.3d at 1319, 1322 (sending letter to

2   California demanding money in furtherance of an extortion scheme); *Metropolitan Life Ins. Co. v.*

3   *Neaves*, 912 F.2d 1062, 1065 (9th Cir. 1990) (sending numerous letters to California in furtherance of

4   a scheme to defraud the plaintiff); *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082,

5   1088 (9th Cir. 2000) (letters to forum state plaintiff threatening the plaintiff's property right in forum

6   state); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2000) (targeting forum

7   state residents with radio and print media); *see generally Pebble Beach*, 453 F.3d at 1156-58.

8        Lacking the required *evidence* of contacts, Plaintiffs speculate without any foundation that

9   SCEE "has actively engaged in a coordinated plan to distribute the infringing product in the United

10  States." (Opp. at 8-10.)  The unrebutted Andall Declaration conclusively controverts Plaintiffs'

11  unfounded assertions.  (Andall Decl. ¶¶ 5-6, 19, 20.)  All the evidence in the record is that SCEE's

12  marketing efforts are restricted to its territory and that it has not participated in any joint marketing

13  efforts with SCEA  (*Id.*)  Plaintiffs' speculation and conclusory arguments should be disregarded; they

14  cannot support personal jurisdiction. *Jazini*, 148 F.3d at 185; *Greenspun*, 634 F.2d at 1208.  "[T]he

15  court cannot ignore the weighty constitutional concerns underlying jurisdiction, or relieve the plaintiff

16  of his burden to prove jurisdictional facts through unfounded inferences, especially in a case involving

17  foreign defendants." *Markey*, 2007 WL 11110787, at *3.

18        Plaintiffs rely to no avail on *Mattel*, a case involving a plaintiff that actually proffered facts to

19  show a "coordinated plan" among the foreign defendants and the local defendant. *Mattel, Inc. v. MCA*

20  *Records, Inc.*, 28 F. Supp. 2d 1120, 1126-28 (C.D. Cal. 1998).  In *Mattel*, court held that jurisdiction

21  over foreign defendants was proper when the plaintiff had identified many instances where each of the

22  foreign parties actually had contacts with California.  Mattel demonstrated that each foreign defendant

23  had sent either the allegedly infringing albums or promotional materials into California and that all of

24  the defendants, including the foreign defendants, engaged in a coordinated plan to distribute and sell

25  in the United States. *Id.* at 1126-28.  There are no similar facts here.  Unlike *Mattel,* there is no

26  evidence that SCEE sent products or promotional materials to California or participated in a

27  coordinated plan to distribute products to California akin to *Mattel*.  To the contrary, SCEE has

28  submitted evidence that it did not participate in such marketing efforts. (Andall Decl. ¶¶ 3, 16, 19.)

─ 5 ─

1    Plaintiffs, thus, are left to try to rely on *SCEA*'s contacts with California. Ignoring the ample

2    authority in SCEA's opening brief that a U.S. corporation's in-state contacts cannot be attributed to a

3    foreign affiliate, they repeatedly and wrongly suggest that SCEA's conduct can be imputed to SCEE

4    for purposes of specific personal jurisdiction and employ agency or alter-ego language, for example:

5    "[j]urisdiction is proper because SCEA has, on behalf of SCEE, marketed or sold infringing products"

6    and "SCEE and its sister-corporation SCEA, *acting in concert*, intentionally adopted the BUZZ!

7    trademark for use." (Opp. at 4, 7-8, 10, 12, 15, italics in original (citing to Abrams Decl. ¶¶ 11-14[4]).)

8    Unrebutted evidence, however, shows that SCEA is not the agent or alter ego of SCEE. (*See* Andall

9    Decl. ¶¶ 2, 7, 19.)

10    Plaintiffs also argue that SCEA's contacts with California should count because a trademark

11    owner owes a duty of quality control over a licensee or affiliate's use. However, trademark law does

12    not impose an agency or *alter ego* relationship based on any quality control duty by a trademark

13    owner, contrary to Plaintiffs' insinuation.[5] *See Oberlin v. Marlin Am. Corp.*, 596 F.2d 1322, 1327

14    (7th Cir. 1979) (the duty of quality control for trademark purposes "does not automatically saddle the

15    licensor with the responsibilities under state law of a principal for his agent"). Far from *alter ego*

16    control, trademark law presumes only a "narrow" duty of quality control, especially when the parties

17    have a close relationship. *Id.* In fact, a mark owner may be entitled to rely entirely on a licensee's

18    quality control efforts. *See, e.g., Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1121 (5th

19    Cir. 1991); *Taffy Original Designs, Inc. v. Taffy's Inc.*, 161 U.S.P.Q. 707, 713 (N.D. Ill. 1966).

20    Plaintiffs' speculation about the scope of a legal presumption does not convert SCEE into SCEA's

21    *alter ego* nor does it contribute any evidence of SCEE's contacts with California.

22    Finally, Plaintiffs imply that a trademark owner's receipt of a financial benefit can establish

23    ――――――――――――――

24    [4]  SCEE objects to paragraphs 6-7, 11-12, 14 of Abrams Declaration as inadmissible hearsay and lay opinions in violation of Federal Rules of Evidence 701, 802 and 805. As such, they should not be considered. *See Travelers Cas. & Sur. Co. of Am. v. Telstar Constr. Co.*, 252 F. Supp. 2d 917, 923,

25    925 (D. Ariz. 2003) (striking evidence that are inadmissible under Federal Rules of Evidence); *see also Markey*, 2007 WL 1110787, at *1.

26

27    [5]  The cases cited by Plaintiffs do not address personal jurisdiction and are merely cited for the proposition that a trademark licensor owes a duty to supervise quality control. *See Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589 (9th Cir. 2002); *Miller v. Glenn Miller Prods.*, 318

28    F. Supp. 2d 923, 933 (C.D. Cal. 2004); *In re Wella A.G.*, 787 F.2d 1549, 1554 (Fed. Cir. 1986).

1    personal jurisdiction (Opp. at 10, 16), but they ignore the cases in SCEE's opening brief holding that

2    receipt of financial benefit is "irrelevant" to show jurisdictional contacts.  *See Rano v. Sipa Press, Inc.*,

3    987 F.2d 580, 588 (9th Cir.1993); *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355,

4    1361-62 (Fed. Cir. 1998) (owner's "receipt of royalty income from … sales made in Minnesota is

5    equally irrelevant").  As the U.S. Supreme Court observed in its seminal decision in *World-Wide*

6    *Volkswagen*, "[f]inancial benefits accruing to the defendant from a collateral relation to the forum

7    State *will not support jurisdiction* if they do not stem from a constitutionally cognizable contact with

8    that State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980) (emphasis added).

9

10        **2.    Plaintiffs Fail To Establish That The Brunt Of The Harm Occurred
             In California Or, If So, That SCEE Had Knowledge Of Such Harm**

11        Plaintiffs similarly fail to show that SCEE knew or should have known that any "intentional

12   act" expressly aimed at California would cause the brunt of harm in California.  Here, there is nothing

13   to suggest that California bears any special relationship to Plaintiffs' business so that the "brunt of

14   harm" may be presumed to occur here. *Panavision*, 141 F.3d at 1321 (brunt of harm felt in California

15   because "the heart of the theatrical motion picture and television industry is located there" in

16   California in addition to being the plaintiff's location); *Indianapolis Colts, Inc. v. Metro. Baltimore*

17   *Football Club Ltd. P'ship*, 34 F.3d 410, 411 (7th Cir. 1994) (brunt of harm in Indiana where team's

18   fan base located).  Plaintiffs rely solely on their residence here, but as the foregoing cases show, the

19   "brunt of harm" test requires more than a party's bare assertion that it resides in California.

20        Even if Plaintiffs' residence in California were sufficient, there is no evidence that SCEE knew

21   or should have known that fact when SCEE filed its ITU application in 2004.  SCEE applied for a

22   trademark associated with video game apparatus and in-home video games with its ITU application on

23   December 1, 2004 (First Am. Compl. ¶ 27); Plaintiffs did not, on the other hand, file their "buzztime"

24   application for video game machines and in-home video games until February 10, 2005 (*id.* at ¶ 23).

25   Prior to 2005, Plaintiffs had not filed any trademark applications at the USPTO for video game

26   machines and in-home video games.  Thus, at the time SCEE filed the application, Plaintiffs had not

27   even have a relevant trademark application on file.  Further, the correspondence Plaintiffs sent to

28   SCEE through outside counsel was sent immediately prior to this lawsuit, long after the time period

– 7 –

1    when SCEE filed its ITU applications. Idle speculation about what SCEE knew when does not

2    warrant finding that the third prong of the "effects" test is met.[6] *See Callaway*, 125 F. Supp. 2d at

3    1200 ("plaintiff does not adduce facts sufficient to establish that defendant knew or should have

4    known plaintiff was a resident of California, had its principal place of business in California, or

5    otherwise feel the brunt of the effects" since Callaway is engaged in business throughout United

6    States).

7
8        **B.    Plaintiffs Fail To Show The Required Nexus Between Any Forum Contact
              By SCEE And Plaintiffs' Trademark Claims**

9        To establish *specific* personal jurisdiction, Plaintiffs must show that SCEE's contacts are a

10   "but for" cause of their claims. *Doe v. American Nat'l Red Cross*, 112 F. 3d 1048, 1051-52 (9th Cir.

11   1997). This they cannot do. Because all Plaintiffs' claims arise out of alleged infringing sales — and

12   SCEE has not made any such sales — there cannot be the required nexus. Plaintiffs purport to rely on

13   SCEE's filing of ITU applications, but such filings clearly are not necessary to SCEA's distribution of

14   the allegedly infringing video games. As such, the trademark filings cannot be a "but for" cause of

15   Plaintiffs' claims.

16       **C.    Asserting Jurisdiction Over SCEE Would Be Unreasonable**

17       Because Plaintiffs fail to show even a *prima facie* case of purposeful availment, jurisdiction

18   fails and there is no need to consider whether or not jurisdiction would be unreasonable. Nonetheless,

19   the reasonableness factors do not support exercise of jurisdiction. First, there was no purposeful

20   interjection into California. Contrary to Plaintiffs' contention, the Ninth Circuit does not equate

21   "purposeful availment" with "purposeful interjection."[7] SCEE did not interject any activities at

22
---
23   [6] Moreover, the alleged 1997 transaction between Plaintiffs and an entity called "Sony Trans Com"
     establishes no relevant knowledge by SCEE or its contacts with California. Even if such a transaction
24   did occur, it is absurd to infer that SCEE should have known anything about another Sony company's
     purported transaction from seven years prior to SCEE's 2004 filing, let alone known the other
     transacting party's name and state of residence.
25
     [7] As stated in authorities cited by Plaintiffs: "Even if there is sufficient 'interjection' into the state to
26   satisfy the purposeful availment prong, the degree of interjection is a factor to be weighed in assessing
     the overall reasonableness of jurisdiction … [t]he smaller the element of purposeful interjection, the
27   less is jurisdiction to be anticipated and the less reasonable is its exercise." *Core-Vent Corp. v. Nobel
     Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993); *see also Panavision*, 141 F.3d at 1323.
28

1   California.  Second, the burden on SCEE would be substantial and "[t]he unique burdens placed upon

2   one who must defend oneself in a foreign legal system should have significant weight in assessing the

3   reasonableness." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987).  Moreover, this

4   burden far outweighs any need for SCEE to defend an infringement suit, when SCEE has never

5   engaged in the distribution of the allegedly infringing product.

6          Likewise the fifth and seventh factors regarding efficiency of and alternative forums weigh

7   against reasonableness.  Plaintiffs have direct recourse to a proceeding before the USPTO to oppose

8   pending trademark applications or cancel the registration.  The third, fourth and sixth factors are

9   neutral or weigh against Plaintiffs, as discussed in SCEE's opening brief.  Plaintiffs failed to discuss

10  or distinguish the authorities stating reservations about assuming jurisdiction when the forum

11  activities with the non-resident are insubstantial.  *Floyd J. Harkness Co. v. Amezcua*, 60 Cal. App. 3d

12  687, 694 (1976).[8]

13

14  **D.      Plaintiffs' Contention That SCEE Is A Necessary Party Is Irrelevant
            and Wrong**

15         SCEE is not a "necessary party" to Plaintiffs' claims for trademark infringement, but, even if it

16  was, this would have no bearing on the personal jurisdiction issue before this Court.  Not only is

17  SCEE's presence not "necessary" to adjudicate Plaintiffs' allegations of infringement arising out of

18  SCEA's sales, it is superfluous.  Plaintiffs could have no claim for damages or injunctive relief against

19  a party who is engaging in no allegedly infringing activities in the jurisdiction.  Even if SCEE's

20  participation was required for Plaintiffs' request concerning SCEE's pending trademark applications,

21  Plaintiffs have direct recourse to objection, opposition, or cancellation actions before the USPTO.

22

23

---

24  [8]  Plaintiffs, as an afterthought, suggest in their conclusion that they should be allowed to take
     jurisdictional discovery.  Plaintiffs, however, fail to make any argument, let alone the required
25  showing, to justify discovery.  "When a plaintiff offers only speculation or conclusory assertions about
     contacts with a forum state, a court is within its discretion in denying jurisdictional discovery."
26  *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003).
     Plaintiffs may not rely on "attenuated" arguments and "bare allegations in the face of specific
27  denials." *Pebble Beach*, 453 F. 3d at 1160.  To the contrary, Plaintiffs must demonstrate at least a
     "colorable case for jurisdiction" and show the court "what additional facts would be found if
28  discovery were permitted." *Moore's Fed. Practice*, §12.31[8] at p. 12-60.  Plaintiffs do neither.

---

– 9 –

III.    **SERVICE WAS IMPROPER UNDER THE UNITED KINGDOM'S SERVICE LAWS**

Because SCEE is a foreign corporation in the United Kingdom, Plaintiffs are required to serve it under Rule 4(h)(2), which only partially incorporates Rule 4(f). Rule 4(h)(2) expressly prohibits the service of foreign corporations by personal delivery, and expressly refuses to incorporate the portion of Rule 4(f) that, if incorporated, would authorize personal delivery on foreign corporations. Despite this clear prohibition, Plaintiffs argue that service was effective under either the Hague Convention or under Rule 4(f)(2)(A). However, both of these sources would require that service be in accord with the law of the United Kingdom. *See* Article 10 of the Hague Convention; Rule 4(f)(2)(A) (service must occur "as prescribed by the foreign country's law"). Plaintiffs here did not follow the United Kingdom's civil procedural rules, which only allow service on a company "by leaving [the document] with a person holding a senior position," who is "a director, the treasurer, secretary, chief executive, manager or other officer of the company." U.K. Civil Procedural Rule 6.4.4 & Service Practice Direction 6.2(1).[9] Plaintiffs' process server did not serve a director or an officer of SCEE. (Andall Decl. ¶¶ 1, 21.) Thus, Plaintiffs did not serve according to U.K. law and cannot rely upon the Hague Convention or Federal Rule of Civil Procedure 4(f)(2)(A).

IV.    **CONCLUSION**

SCEE respectfully requests that the Court grant its motion to dismiss for lack of personal jurisdiction and insufficiency of service of process.

DATED: June 16, 2008                    Respectfully submitted,

TOWNSEND AND TOWNSEND AND CREW LLP

By: /s/ Timothy R. Cahn
JAMES G. GILLILAND, JR.
jggilliland@townsend.com
TIMOTHY R. CAHN
trcahn@townsend.com
MEGAN M. CHUNG
mmchung@townsend.com

Attorneys for Defendant
SONY COMPUTER ENTERTAINMENT EUROPE LTD.

---

[9] These rules are attached hereto as Exhibits A and B under Fed. R. Civ. P. 44.1. All of the U.K's Civil Procedural Rules are available at http://www.justice.gov.uk/civil/procrules_fin/index.htm.

-- 10 --

# EXHIBIT A

# SERVICE OF DOCUMENTS

### Contents of this Part

**I  GENERAL RULES ABOUT SERVICE**

Rule 6.1    Part 6 rules about service apply generally

Rule 6.2    Methods of service – general

Rule 6.3    Who is to serve

Rule 6.4    Personal service

Rule 6.5    Address for service

Rule 6.6    Service of documents on children and protected parties

Rule 6.7    Deemed service

Rule 6.8    Service by an alternative method

Rule 6.9    Power of court to dispense with service

Rule 6.10    Certificate of service

Rule 6.11    Notification of outcome of postal service by the court

Rule 6.11A    Notice of non-service by bailiff

**II  SPECIAL PROVISIONS ABOUT SERVICE OF THE CLAIM FORM**

Rule 6.12    General rules about service subject to special rules about service of claim form

Rule 6.13    Service of claim form by the court – defendant's address for service

Rule 6.14    Certificate of service relating to the claim form

Rule 6.15    Service of claim form by contractually agreed method

Rule 6.16    Service of claim form on agent of principal who is overseas

**III  Special provisions about service out of the jurisdiction**

Rule 6.17    Scope of this section

Rule 6.18    Definitions

Rule 6.19    Service out of the jurisdiction where the permission of the court is not required

Rule 6.20    Service out of the jurisdiction where the permission of the court is required

Rule 6.21    Application for permission to serve claim form out of jurisdiction

Rule 6.22    Period for acknowledging service or admitting the claim where the claim form is served out of the jurisdiction under rule 6.19

Rule 6.23    Period for filing a defence where the claim form is served out of the jurisdiction under rule 6.19

Rule 6.24    Method of service – general provisions

Rule 6.25    Service through foreign governments, judicial authorities and British Consular authorities

Rule 6.26    Procedure where service is to be through foreign governments, judicial authorities and British Consular authorities

Rule 6.26A    Service in accordance with the Service Regulation

Rule 6.27    Service of claim form on State where court permits service out of the jurisdiction

Rule 6.28   Translation of claim form
Rule 6.29   Undertaking to be responsible for expenses of the Foreign and Commonwealth Office
Rule 6.30   Service of documents other than the claim form
Rule 6.31   Proof of service
   **IV   Service of foreign process**
Rule 6.32   Scope and definitions
Rule 6.33   Request for service
Rule 6.34   Method of service
Rule 6.35   After service

## I   GENERAL RULES ABOUT SERVICE

### 6.1   Part 6 rules about service apply generally

The rules in this Part apply to the service of documents, except where –

(a) any other enactment, a rule in another Part, or a practice direction makes a different provision; or

(b) the court orders otherwise.

(For service in possession claims, see Part 55.)

### 6.2   Methods of service – general

(1) A document may be served by any of the following methods –

(a) personal service, in accordance with rule 6.4;

(b) first class post (or an alternative service which provides for delivery on the next working day);

(c) leaving the document at a place specified in rule 6.5;

(d) through a document exchange in accordance with the relevant practice direction; or

(e) by fax or other means of electronic communication in accordance with the relevant practice direction.

(Rule 6.8 provides for the court to permit service by an alternative method)

(2) A company may be served by any method permitted under this Part as an alternative to the methods of service set out in –

(a) section 725 of the Companies Act 1985[1] (service by leaving a document at or posting it to an authorised place);

(b) section 695 of that Act (service on overseas companies); and

(c) section 694A of that Act (service of documents on companies incorporated outside the UK and Gibraltar and having a branch in Great Britain).

### 6.3   Who is to serve

(1) The court will serve a document which it has issued or prepared except where –

(a) a rule provides that a party must serve the document in question;

(b) the party on whose behalf the document is to be served notifies the court that he wishes to serve it himself;

(c) a practice direction provides otherwise;

---

[1] 1985 c.6.

(d) the court orders otherwise; or

(e) the court has failed to serve and has sent a notice of non-service to the party on whose behalf the document is to be served in accordance with rule 6.11.

(2) Where the court is to serve a document, it is for the court to decide which of the methods of service specified in rule 6.2 is to be used.

(3) Where a party prepares a document which is to be served by the court, that party must file a copy for the court, and for each party to be served.

## 6.4    Personal service

(1) A document to be served may be served personally, except as provided in paragraphs (2) and (2A).

(2) Where a solicitor –

(a) is authorised to accept service on behalf of a party; and

(b) has notified the party serving the document in writing that he is so authorised, a document must be served on the solicitor, unless personal service is required by an enactment, rule, practice direction or court order.

(2A) In civil proceedings by or against the Crown, as defined in rule 66.1(2), documents required to be served on the Crown may not be served personally.

(3) A document is served personally on an individual by leaving it with that individual.

(4) A document is served personally on a company or other corporation by leaving it with a person holding a senior position within the company or corporation.

(The service practice direction sets out the meaning of 'senior position')

(5) A document is served personally on a partnership where partners are being sued in the name of their firm by leaving it with –

(a) a partner; or

(b) a person who, at the time of service, has the control or management of the partnership business at its principal place of business.

## 6.5    Address for service

(1) Except as provided by Section III of this Part (service out of the jurisdiction) a document must be served within the jurisdiction.

('Jurisdiction' is defined in rule 2.3)

(2) A party must give an address for service within the jurisdiction. Such address must include a full postcode, unless the court orders otherwise.

(Paragraph 2.4 of the Practice Direction to Part 16 contains provision about the content of an address for service).

(3) Where a party –

(a) does not give the business address of his solicitor as his address for service; and

(b) resides or carries on business within the jurisdiction, he must give his residence or place of business as his address for service.

(4) Any document to be served –

# EXHIBIT B

PRACTICE DIRECTION

# SERVICE

**This Practice Direction supplements CPR Part 6**

## METHODS OF SERVICE

**1.1**  The various methods of service are set out in rule 6.2.

**1.2**  The following provisions apply to the specific methods of service referred to.

## SERVICE BY NON-ELECTRONIC MEANS

### Service by Document Exchange

**2.1**  Service by document exchange (DX) may take place only where:

**(1)**  the party's address for service[1] includes a numbered box at a DX, or

**(2)**  the writing paper of the party who is to be served or of his legal representative[2] sets out the DX box number, and

**(3)**  the party or his legal representative has not indicated in writing that they are unwilling to accept service by DX.

**2.2**  Service by DX is effected by leaving the document addressed to the numbered box:

**(1)**  at the DX of the party who is to be served, or

**(2)**  at a DX which sends documents to that party's DX every business day.

## SERVICE BY ELECTRONIC MEANS

### Service by Facsimile

**3.1**  Subject to the provisions of paragraph 3.3 below, where a document is to be served by electronic means –

**(1)**  the party who is to be served or his legal representative must previously have expressly indicated in writing to the party serving –

**(a)**  that he is willing to accept service by electronic means; and

**(b)**  the fax number, e-mail address or electronic identification to which it should be sent; and

**(2)**  the following shall be taken as sufficient written indication for the purposes of paragraph 3.1(1) –

**(a)**  a fax number set out on the writing paper of the legal representative of the party who is to be served; or

**(b)**  a fax number, e-mail address or electronic identification set out on a statement of case or a response to a claim filed with the court.

---

1   See rule 6.5.
2   See rule 2.3 for the definition of legal representative.

**3.2** Where a party seeks to serve a document by electronic means he should first seek to clarify with the party who is to be served whether there are any limitations to the recipient's agreement to accept service by such means including the format in which documents are to be sent and the maximum size of attachments that may be received.

**3.3** An address for service given by a party must be within the jurisdiction and any fax number must be at the address for service. Where an e-mail address or electronic identification is given in conjunction with an address for service, the e-mail address or electronic identification will be deemed to be at the address for service.

**3.4** Where a document is served by electronic means, the party serving the document need not in addition send a hard copy by post or document exchange.

## SERVICE ON CERTAIN INDIVIDUALS

### Personal Service on Partners

**4.1** Where partners are sued in the name of a partnership, service should be in accordance with rule 6.4(5) and the table set out in rule 6.5(5) where it refers to an 'individual who is suing or being sued in the name of a firm'.

**4.2** A claim form or particulars of claim which are served by leaving them with a person at the principal or last known place of business of the partnership, must at the same time have served with them a notice as to whether that person is being served:

**(1)** as a partner,

**(2)** as a person having control or management of the partnership business, or

**(3)** as both.

### Service on Members of H.M. Forces and United States Air Force

**5** The Lord Chancellor's Office issued a memorandum on 26 July 1979 as to service on members of H.M. Forces and guidance notes as to service on members of the United States Air Force. The provisions annexed to this practice direction are derived from that memorandum and guidance notes.

## SERVICE GENERALLY

### Personal Service on a Company or other corporation

**6.1** Personal service on a registered company or corporation in accordance with rule 6.4(4) service is effected by leaving a document with 'a person holding a senior position'.

**6.2** Each of the following persons is a person holding a senior position:

**(1)** in respect of a registered company or corporation, a director, the treasurer, secretary, chief executive, manager or other officer of the company or corporation, and

**(2)** in respect of a corporation which is not a registered company, in addition to those persons set out in (1), the mayor, chairman, president, town clerk or similar officer of the corporation.

**CERTIFICATE OF SERVICE**

I declare that I am employed in the City and County of San Francisco, California; I am over the age of 18 years and not a party to the within action; my business address is Two Embarcadero Center, Eighth Floor, San Francisco, California 94111. On the date set forth below, I served a true and accurate copy of the document(s) entitled: **SONY COMPUTER ENTERTAINMENT EUROPE LTD.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND INSUFFICIENCY OF PROCESS** on the party(ies) in this action as follows:

Lisa M. Martens
FISH & RICHARDSON, P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: 858-678-5070
Facsimile: 858-678-5099
E-Mail: martens@fr.com

*Attorney for Plaintiffs and Counter-Defendants*
*BUZZTIME ENTERTAINMENT, INC. and*
*NTN BUZZTIME, INC.*

☒    [By Court's Electronic Filing System] I caused said document to be filed electronically and a notice to be sent to all parties by operation of the Court's electronic filing system.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this date at San Francisco, California.

DATED: June 16, 2008               /s/ Timothy R. Cahn _____
                                   Timothy R. Cahn

61401934 v1