1  TOWNSEND AND TOWNSEND AND CREW LLP
   JAMES G. GILLILAND, JR.  (State Bar No. 107988)
2  jggilliland@townsend.com
   TIMOTHY R. CAHN  (State Bar No. 162136)
3  trcahn@townsend.com
   MEGAN M. CHUNG  (State Bar No. 232044)
4  mmchung@townsend.com
   Two Embarcadero Center, 8th Floor
5  San Francisco, CA 94111
   Telephone:  (415) 576-0200
6  Facsimile:   (415) 576-0300

7  Attorneys for Defendant
   SONY COMPUTER ENTERTAINMENT EUROPE LTD.

8

9                      UNITED STATES DISTRICT COURT

10                   SOUTHERN DISTRICT OF CALIFORNIA

11  BUZZTIME ENTERTAINMENT, INC. and          **Case No.  08 CV 0122 W LSP**
    NTN BUZZTIME, INC.,
12                                            **MEMORANDUM OF POINTS AND**
                    Plaintiffs,               **AUTHORITIES IN SUPPORT OF SONY**
13                                            **COMPUTER ENTERTAINMENT**
            v.                                **EUROPE LTD.'S RENEWED MOTION**
14                                            **TO DISMISS FOR LACK OF PERSONAL**
    SONY COMPUTER ENTERTAINMENT              **JURISDICTION**
15  EUROPE LTD. and SONY COMPUTER
    ENTERTAINMENT AMERICA INC.,
16                                            **NO ORAL ARGUMENT PURSUANT TO**
                    Defendants.               **LOCAL RULE**
17
    _____        Date:  October 13, 2008
18                                              Time:  10:00 a.m.
    SONY COMPUTER ENTERTAINMENT                        Courtroom 7, 3rd Floor
19  AMERICA INC.,                                      Hon. Thomas J. Whelan

20                  Counter-Complainant,

21          v.

22  BUZZTIME ENTERTAINMENT, INC. and
    NTN BUZZTIME, INC.,
23
                    Counter-Defendants.
24

25

26

27

28

1

**TABLE OF CONTENTS**

2

Page

3

I.   INTRODUCTION ............................................................................................... 1

4

II.  STATEMENT OF FACTS ................................................................................ 4

5

     A.   The First Amended Complaint And Jurisdictional Allegations ..................... 4

6

     B.   SCEE Is A Distinct Foreign Corporation That Conducts  No
          Advertising or Sales in California or in the United States. ........................... 5

7

8

     C.   SCEE Has No Other Jurisdictionally Significant Contacts with
          California. ...................................................................................................... 6

9

III. ARGUMENT ...................................................................................................... 6

10

     A.   Plaintiffs Must Prove Personal Jurisdiction With Particular Facts That
          Establish Necessary Ties Between SCEE and California ............................... 6

11

12

     B.   Plaintiffs Have Not Alleged And Cannot Prove General Jurisdiction
          Because SCEE Does Not Maintain Continuous and Systematic
          Contacts With California ................................................................................ 7

13

14

     C.   There Is No Specific Personal Jurisdiction Because SCEE Has Not
          Purposefully Aimed or Directed Any Activities at California, No
          Claims Arise Out of Sales by SCEE, and Jurisdiction Would Be
          Unreasonable. ................................................................................................. 8

15

16

          1.   SCEE Has Not Purposefully Availed Itself of California or
               Expressly Aimed Any Activity at California ....................................... 9

17

18

               a)   Owning and Filing Trademark Applications Does Not
                    Establish Purposeful Direction To California ........................... 10

19

20

               b)   SCEA's Presence and Activities in California Are Not
                    SCEE's Activities For Purposes of Personal
                    Jurisdiction .............................................................................. 12

21

22

               c)   Owning a Promotional Website Does Not Constitute
                    An Act Purposefully Directed at California ............................. 13

23

          2.   Plaintiffs Cannot Establish the "Arise Out Of" Requirement
               For Specific Personal Jurisdiction ...................................................... 14

24

          3.   Asserting Personal Jurisdiction over SCEE Would Be
               Unreasonable Here .............................................................................. 14

25

IV.  CONCLUSION ................................................................................................ 15

26

27

28

1

**TABLE OF AUTHORITIES**

2

Page

3

**Cases**

4

*A.T.&T. v. Compagnie Bruxelles Lambert*,
    94 F.3d 586 (9th Cir. 1996) ................................................................................ 3, 8, 12

5

*Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*,
    1996 WL 467293 (N.D. Cal. Jul. 24, 1996) ................................................................ 11

6

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
    223 F.3d 1082 (9th Cir. 2000) ................................................................................ 8, 12

7

8

*Cascade Corp. v. Hiab-Foco AB*,
    619 F.2d 36 (9th Cir. 1980) ......................................................................................... 11

9

*Core-Vent Corp. v. Nobel Indus. AB*,
    11 F.3d 1482 (9th Cir. 1993) ....................................................................................... 15

10

11

*Cybersell, Inc. v. Cybersell, Inc.*,
    130 F.3d 414 (9th Cir. 1997) ................................................................................ passim

12

*Dex Prods., Inc. v. Houghteling*,
    No. C 05-05126 SI, 2006 WL 1751903 (N.D. Cal. Jun. 23, 2006) ............................... 12

13

14

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir.2001) ................................................................... 8, 11, 12, 14

15

*Dole Food Co. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002) .................................................................................. 10

16

17

*F. Hoffman-La Roche, Ltd.*,
    130 Cal. App. 4th 782 (2005) ................................................................................ 3, 13

18

*Farmer's Ins. Exchange v. The Portage La Prairie Mut. Ins. Co.*,
    907 F.2d 911 (9th Cir. 1990) ........................................................................................ 1

19

20

*Floyd J. Harkness Co. v. Amezcua*,
    60 Cal. App. 3d 687 (1976) ......................................................................................... 15

21

*Flynt Distrib. Co. v. Harvey*,
    734 F.2d 1389 (9th Cir. 1984) ...................................................................................... 3

22

23

*Freudensprung v. Offshore Technical Servs.*,
    379 F.3d 327 (5th Cir. 2004) ........................................................................................ 3

24

*Hanson v. Denckla*,
    357 U.S. 235 (1958) ................................................................................................... 10

25

26

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ...................................................................................................... 7

27

28

1

**TABLE OF AUTHORITIES (con't)**

2

<u>Page</u>

3

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.,*
    485 F.3d 450 (9th Cir. 2007) ................................................................................. 8, 12

4

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945) .............................................................................................. 7, 8

5

6

*Love v. The Mail on Sunday,*
    No. CV05-7798ABCPJWX, 2006 WL 4046170 (C.D. Cal. Jul. 14, 2006) ................................... 11

7

*MacConnell v. Schwamm,*
    No. 00-CV-0439 W(LSP) ............................................................................................ 9

8

9

*Markey v. Kudelski S.A.*, No. 06-CV-1300 W(RBB), 2007 WL 1110787 (S.D. Cal.
    Apr. 3, 2007) ......................................................................................................... 7

10

*Omeluk v. Langsten Slip & Batbyggeri A/S,*
    52 F.3d 267 (9th Cir. 1995) .......................................................................................... 9

11

12

*Panavision Int'l, L.P. v. Toeppen,*
    141 F.3d 1316 (9th Cir. 1998) .................................................................................. 7, 9

13

*Pebble Beach Co. v. Caddy,*
    453 F.3d 1151 (9th Cir. 2006) .............................................................................. passim

14

15

*Rano v. Sipa Press, Inc.,*
    987 F.2d 580 (9th Cir. 1993) ............................................................................ 7, 12, 13

16

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
    148 F.3d 1355 (Fed. Cir. 1998) ................................................................................... 13

17

18

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2004) ................................................................................. passim

19

*Steel v. United States,*
    813 F.2d 1545 (9th Cir. 1987) ...................................................................................... 1

20

21

*Williams v. Canon, Inc.,*
    432 F. Supp. 376 (C.D. Cal. 1977) ....................................................................... 3, 11, 12

22

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980) .......................................................................................... 6, 13, 14

23

24

**Statutes**

25

Cal. Civ. Proc. Code § 410.10 ....................................................................................... 7

26

**Rules**

27

Fed. R. Civ. P. 12(b)(2) .............................................................................................. 6

28

1  **I.     INTRODUCTION**

2          On July 10, 2008, this Court dismissed this action against Defendant Sony Computer

3  Entertainment Europe Ltd. ("SCEE") based on improper service of process and provided Plaintiffs

4  ninety days to properly serve SCEE in accordance with the Hague Convention and/or Rule 4(f).

5  (Order Granting Motion To Dismiss, Dkt. No. 26, at 6-7.)  This Court noted that, if SCEE was served

6  successfully, the Court expected SCEE to re-contest personal jurisdiction.  (*Id.* at 6.)  Plaintiffs served

7  SCEE with a copy of the FAC on or about August 13, 2008, with notice that SCEE had thirty days to

8  respond to the FAC.  (Request for Service Abroad of Judicial or Extrajudicial Documents, Dkt. No.

9  29, at 3; Certification of Service under Hague Convention, filed on September 8, 2008, at 2.)

10         SCEE hereby renews its motion to dismiss for lack of personal jurisdiction based on the

11  arguments and supporting evidence filed with the original motion.[1]  The law has not changed.  Nor

12  could the jurisdictional facts have changed since "[o]nly contacts occurring *prior to the event causing*

13  *the litigation may be considered*" for jurisdictional purposes.  *Farmer's Ins. Exchange v. The Portage*

14  *La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990) (affirming the district court's decision to

15  give little weight to communications and investigations that occurred within the forum state after the

16  event that cause the litigation) (emphasis added).[2]  Hence, the only relevant facts are those

17  surrounding the events alleged in the FAC that led to the commencement of this lawsuit.  Because the

18  parties have fully briefed the relevant jurisdictional facts and cases in their original briefs, SCEE

19  requests that the Court consider the matter submitted based on the previously submitted briefs and

20  evidence.

21         Below, SCEE resubmits its original opening brief with respect to its arguments supporting lack

22

23  [1] The only changes made from the original motion to dismiss (Dkt. No. 19) are addition of the
procedural history since the Court's July 10 Order in the introduction and deletions throughout the

24  brief to the previous arguments regarding improper service.  For the Court's convenience, the original
briefs and declarations, including the opposition and reply, are attached to Declaration of Timothy R.

25  Cahn.

26  [2] *See also Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987) (for specific jurisdiction, "the

27  fair warning that due process requires arises not at the time of the suit, but when the events that gave
rise to the suit occurred" and thus, contacts that occurred after the event causing litigation are

28  irrelevant).

1  of personal jurisdiction.  All of the prior briefs and declarations have been attached as exhibits to

2  Declaration of Timothy R. Cahn.

3                                        *        *        *

4         Plaintiffs claim in their First Amended Complaint ("FAC") that SCEE and Defendant Sony

5  Computer Entertainment America Inc. ("SCEA") promote and sell in the United States video games

6  used with the PlayStation® 2 system — *e.g.*, the "BUZZ! the Mega Quiz" game — that allegedly

7  infringe Plaintiffs' purported trademark rights in "buzztime" and other alleged marks.  (FAC ¶¶ 1, 6-

8  11, 27-33.)  SCEE, a UK company, renews this motion to dismiss for lack of personal jurisdiction

9  because SCEE *does <u>not</u> manufacture, sell, or promote* the allegedly infringing video games in

10  California or elsewhere in the United States.  (Declaration of Hogarth Andall in Support of SCEE's

11  Motion to Dismiss ("Andall Decl."), previously filed at Dkt. No. 19-3, at ¶ 6.)

12         SCEE has never sold or promoted *any* goods in California or in the United States for the

13  simple reason that SCEE's territory extends only to Europe and other regions outside the United States

14  (*i.e.*, Europe, the Middle East, Africa and Oceania (collectively, "EMAO")) and SCEE only sells

15  versions of PlayStation® 2 video games that are electronically compatible with the PAL format

16  computer entertainment systems and televisions used in such foreign countries.  (Andall Decl. ¶ 4.)

17         Having attempted to sue in California a foreign company that has no sales or other presence in

18  California, Plaintiffs simply cannot meet their burden to demonstrate sufficient contacts between

19  SCEE and California to sustain jurisdiction over it.  SCEE maintains no office or other facility in

20  California, has no employees or sales representatives, owns no property or other assets here, and is not

21  even registered to do business in California.  (Andall Decl. ¶¶ 7-8, 10, 14.)  SCEE, not surprisingly,

22  directs no advertising at California consumers because it does not *sell* to California consumers, nor

23  does SCEE even offer for sale the versions of video game software that are compatible with the

24  PlayStation® 2 computer entertainment systems manufactured and marketed for the United States.

25  (Andall Decl. ¶ 4 .)  SCEE owns a  web site -- <www.buzzthegame.com > -- that provides consumers

26  with information about "BUZZ! The Mega Quiz" and other games available for the EMAO market,

27  but the site does not facilitate online purchases by consumers and therefore is not a "contact" with

28  California that would support personal jurisdiction over SCEE.  *Pebble Beach Co. v. Caddy*, 453 F.3d

– 2 –

1    1151, 1156-57 (9th Cir. 2006).  In any event, SCEE's online video game advertisements are directed

2    at foreign, not Californian, consumers and advertise games compatible only with the EMAO version

3    of the PlayStation® 2 computer entertainment system, which is different from the American version

4    of the PlayStation® 2 computer entertainment system.  (Andall Decl. ¶¶ 4-6.)

5         That SCEA markets and sells the accused games in the United States can in no way be imputed

6    to SCEE.  SCEE and SCEA are distinct, independent corporations, each owned by a common

7    corporate parent that is located and incorporated in Japan.  (Andall Decl. ¶ 2.)  Hornbook law clearly

8    provides that a subsidiary or other affiliated company's contacts with the forum are not imputed to the

9    foreign affiliate absent a showing that the affiliate is acting as the foreign company's alter ego "'so as

10   to justify disregard of the corporate entity.'"  *A.T.&T. v. Compagnie Bruxelles Lambert*, 94 F.3d 586,

11   591 (9th Cir. 1996) (quoting *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984));

12   *Freudensprung v. Offshore Technical Servs.*, 379 F.3d 327, 346 (5th Cir. 2004); *F. Hoffman-La*

13   *Roche, Ltd.*, 130 Cal. App. 4th 782, 799-800 (2005).  Plaintiffs here do not, and certainly cannot,

14   allege that SCEA is the alter ego of SCEE.  Indeed, SCEE does not exercise any of the control over

15   SCEA necessary to impute to it SCEA's California contacts.  (Andall Decl. ¶ 2.)  Accordingly, SCEE

16   can only be subject to jurisdiction in California based on *SCEE's* cognizable contacts with the state,

17   which are nil.

18        Furthermore, that SCEA uses SCEE's "BUZZ!" trademark in the United States and that SCEE

19   filed intent-to-use applications with the United States Patent and Trademark Office ("USPTO") in no

20   way establishes personal jurisdiction over SCEE in California.  It is well-established that, for personal

21   jurisdiction purposes, the "use of a trademark by a corporation's subsidiary is not a transaction of

22   business by the parent company."  *Williams v. Canon, Inc.*, 432 F. Supp. 376, 380 (C.D. Cal. 1977).

23   Nor, then, can a U.S. affiliate's use in California of a foreign affiliate's trademark establish that the

24   foreign affiliate has contacts with, or is doing business in, the State of California since the relationship

25   between affiliates is even more remote than a child-parent relationship.  Similarly, a foreign owner's

26   registration of trademarks with the United States Patent and Trademark Office for use by an affiliated

27   company does not constitute cognizable contacts with a state sufficient to confer jurisdiction.  *See*

28   *Williams*, 432 F. Supp. at 379 (foreign parent not subject to personal jurisdiction in California even

– 3 –

1  though the foreign company owned and registered 23 trademarks that were used in California by its

2  subsidiary).

3          Accordingly, Plaintiffs cannot meet their burden to show sufficient jurisdictional contacts by

4  SCEE with California.  Hence, SCEE respectfully requests that the Court grant its motion to dismiss

5  SCEE from the suit.

6  **II.      STATEMENT OF FACTS**

7          **A.      The First Amended Complaint And Jurisdictional Allegations**

8          Plaintiffs filed their original complaint against only SCEE on January 23, 2008, but never

9  served it.  Instead, on February 22, 2008, Plaintiffs filed a First Amended Complaint ("FAC"), adding

10  SCEA as a defendant and allegations regarding SCEA.  Plaintiffs served SCEA with a copy of the

11  FAC on February 28, 2008.  (Dkt. No. 6.)  On April 4, 2008, Plaintiffs' process server hand delivered

12  a copy of the FAC to one of SCEE's employees at SCEE's London office.  Later, on or around April

13  29, 2008, SCEE received by regular mail another copy of the FAC.

14          The FAC alleges that Plaintiffs own the so-called "Buzztime Marks" and that such marks are

15  purportedly infringed by the promotion and sale in the United States of video games that are used with

16  "PS2", which is the PlayStation® 2 computer entertainment system.  (FAC ¶¶ 1, 6-11, 32, 34.)  The

17  allegedly infringing games are:  1) BUZZ! The Mega Quiz; 2) BUZZ! Junior Jungle Party; 3) BUZZ!

18  Junior RoboJam; and 4) BUZZ! The Hollywood Quiz.  (FAC ¶ 32.)

19          Plaintiffs acknowledge in the FAC that SCEE is a foreign corporation "organized under the

20  laws of the United Kingdom."  (FAC ¶ 3.)  Despite recognizing that SCEE is a distinct, foreign

21  corporation, Plaintiffs proceed in the FAC to impliedly attribute SCEA's U.S. activities to SCEE by

22  repeatedly framing the FAC's allegations as against "Defendants" jointly.  The FAC, for instance,

23  claims erroneously that "Defendants" sell the allegedly infringing games in large U.S. retail stores,

24  such as Walmart and Target, including at stores in this judicial district.  (FAC ¶¶ 9, 13, 33.)  Plaintiffs

25  also wrongly allege that "Defendants" promote the games "on the internet at

26  *http://www.us.playstation.com/*."  (FAC ¶ 6; *see also id.* ¶¶ 7, 32, 34.)  The FAC further recounts that

27  SCEE filed three intent-to-use applications with the United States Patent and Trademark Office for the

28  term "BUZZ," on December 1, 2004, May 9, 2005, and May 26, 2005.  (FAC ¶¶ 8, 27-29.)  There are

– 4 –

1    no other allegations in the FAC that conceivably could be construed as relating to personal

2    jurisdiction.

3                    **B.      SCEE Is A Distinct Foreign Corporation That Conducts
                              No Advertising or Sales in California or in the United States.**
4

5           SCEE is a United Kingdom company with its principal place of business in England.  SCEE is

6    distinct and separate from SCEA, with separate headquarters, officers and board of directors.  (Andall

7    Decl. ¶ 2.)  SCEE does not control or direct SCEA's day-to-day operations nor vice versa. (*Id.* ¶ 2.)

8    SCEE does not own stock in SCEA.  (*Id.* ¶ 2.)  SCEE and SCEA each are wholly-owned by Sony

9    Computer Entertainment Inc., a corporation that is located and incorporated in Japan.  (*Id.* ¶ 2.)

10          SCEE is engaged in the business of marketing and distributing video game console hardware

11   and peripheral accessories in the EMAO countries.  (Andall Decl. ¶ 3.)  Among the products that

12   SCEE sells in its territory is the EMAO version of the PlayStation® 2 computer entertainment system,

13   which features a controller and software designed for the playing of video game software on various

14   formats, including CDs, DVDs, music CDs and DVD movies.  (*Id.* ¶ 3.)  SCEE also develops,

15   publishes, markets, and distributes in its territory video game software for use with the EMAO

16   PlayStation® 2 system.  (*Id.* ¶ 4.)  SCEE develops and markets only the versions of "BUZZ!" video

17   games that are restricted for use with systems technologically designed for the EMAO countries.  (*Id.*

18   ¶ 4.)

19          These territorial restrictions ensure that consumers in a specific region of the world will only

20   purchase video game software that functions with the PlayStation® 2 systems available in their

21   regions.  Due to computer coding differences among video game consoles manufactured for different

22   regions of the world, SCEE's video game software manufactured and marketed for countries in

23   SCEE's region will not be compatible with PlayStation® 2 systems manufactured and marketed for

24   the United States.   (Andall Decl. ¶ 4.)  Just as videotapes and DVDs are encoded for specific regions

25   of the world, video game software for PlayStation® 2 systems are region-specific for the various

26   countries in the EMAO region and will not play on the PlayStation® 2 systems sold in the United

27   States.  (*Id.* ¶ 4.)  Consequently, SCEE does not manufacture, market or sell any video game software,

28   or other products, in California or elsewhere in the United States.  Likewise, SCEE has never

– 5 –

1 manufactured, marketed or sold the versions of the "BUZZ!" software that has been available for

2 purchase to California consumers.  (*Id.* ¶ 5.)

3     Since SCEE sells its products exclusively in countries outside the United States, SCEE does

4 not direct any of its advertising toward California residents, or advertise in any publications or media

5 that are directed primarily toward California residents.  (*Id.* ¶ 16.)  SCEE hosts websites that are

6 publicly available, but none of them allows consumers to purchase SCEE's products.  Furthermore,

7 the products on those websites are made specifically for consumers in SCEE's territory and are not

8 compatible with PlayStation® 2 systems used in the United States.  (*Id.* ¶ 17.)  SCEE, thus, has not

9 committed any of the alleged promotional and sale activities in the United States that form the basis

10 for Plaintiffs' trademark claims in the First Amended Complaint.[3]

11     **C.     SCEE Has No Other Jurisdictionally Significant Contacts with California.**

12     SCEE does not have any presence and does not do any business in California.  SCEE is not

13 registered to do business in California and does not have a registered agent in California.  (Andall

14 Decl. ¶ 7.)  SCEE does not have any employees, officers or directors who reside in California.  SCEE

15 does not have any sales agents in California.  (*Id.* ¶ 10.)  SCEE does not own or have any interest in

16 real property in California, nor does it have any bank accounts or other tangible personal property in

17 California.  (*Id.* ¶ 12.)  SCEE does not have any offices or facilities in California, and has no telephone

18 listing or mailing address in California.  (*Id.* ¶ 13.)

19 **III.   ARGUMENT**

20     **A.     Plaintiffs Must Prove Personal Jurisdiction With Particular Facts That Establish
21           Necessary Ties Between SCEE and California**

22     A court must dismiss a defendant when the court lacks jurisdiction over that person.  *See* Fed.

23 R. Civ. P. 12(b)(2); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980);

24

---

25 [3] Plaintiffs allege that SCEE marketed the allegedly infringing games on various webpages from
26 <http://www.us.playstation.com> website and sold, offered for sale, or distributed the allegedly
infringing games in the United States. (FAC. ¶¶ 6-7, 9, 32-34, 39-40, 44, 48, 58-59, 65, 70, 76.)  The
27 website and various webpages referenced in the FAC from <http://www.us.playstation.com> are not
SCEE's.  (Andall Decl. ¶ 18.)  The website <http://www.us.playstation.com> is owned by defendant
28 SCEA.  (*See id.* ¶ 18; Declaration of Timothy R. Cahn ("Cahn Decl.") at ¶ 2.)

1   *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997); *Markey v. Kudelski S.A.*, No. 06-

2   CV-1300 W(RBB), 2007 WL 1110787, at *1 (S.D. Cal. Apr. 3, 2007).  Although the defendant is the

3   moving party in a motion to dismiss, the plaintiff bears the burden of proof on the necessary

4   jurisdictional facts  to show that jurisdiction is proper. *See, e.g., Schwarzenegger v. Fred Martin*

5   *Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Markey*, 2007 WL 1110787, at *1.  When a defendant

6   responds to a complaint with a motion to dismiss with written materials and there is no evidentiary

7   hearing, the plaintiff must make at least a prima facie showing of personal jurisdiction.  *See Markey*,

8   2007 WL 1110787, at *1.  "In this context, a 'prima facie' showing means that plaintiff has produced

9   admissible evidence that, if believed, would be sufficient to establish the existence of personal

10  jurisdiction." *Id.*  This burden is higher on Plaintiffs who seek to establish personal jurisdiction

11  against SCEE, a non-U.S. resident, as compared to a citizen from a sister state.  *Rano v. Sipa Press,*

12  *Inc.*, 987 F.2d 580, 588 (9th Cir. 1993).

13         Since California's long-arm statute is coextensive with the limits of Due Process Clause,

14  Plaintiffs have to show that the requirements of due process are satisfied.  *See* Cal. Civ. Proc. Code §

15  410.10; *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998).  The exercise of

16  personal jurisdiction over a foreign corporation such as SCEE violates the protections created by the

17  Due Process Clause unless the foreign corporation has sufficient "minimum contacts" with the forum

18  state (California) such that "the maintenance of the suit does not offend traditional notions of fair play

19  and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation

20  marks omitted).  The "minimum contacts" requirement may be met in one of two ways:  1) by

21  showing that SCEE has "continuous and systematic" contacts with the forum state such that a court

22  may exercise "general jurisdiction" over the foreign defendant (*see Helicopteros Nacionales de*

23  *Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984)); or 2) by showing that SCEE has purposefully

24  directed its activities at California and that Plaintiffs' claims arise from such activities, such that this

25  Court may exercise "specific jurisdiction." *Schwarzenegger*, 374 F.3d at 801-02.

26

27         **B.      Plaintiffs Have Not Alleged And Cannot Prove General Jurisdiction Because
                    SCEE Does Not Maintain Continuous and Systematic Contacts With California**

28         SCEE does not have substantial or continuous and systematic contacts with California to

– 7 –

1    warrant exercise of general jurisdiction.  For general jurisdiction to exist over a foreign defendant like

2    SCEE, the defendant must have "continuous corporate operations" in California that are "so

3    substantial and of such a nature as to justify suit against it on causes of action arising from dealings

4    entirely distinct from those activities."  *Int'l Shoe*, 326 U.S. at 318.  The Ninth Circuit requires

5    "substantial" or "continuous and systematic" contacts that "approximate physical presence" in the

6    forum state.  *Schwarzenegger*, 374 F.3d at 801 (citing *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,

7    223 F.3d 1082, 1086 (9th Cir. 2000)).  "Factors to be taken into consideration are whether the

8    defendant makes sales, solicits or engages in business in the state, serves the state's markets,

9    designates an agent for service of process, holds a license, or is incorporated there."  *Bancroft &*

10    *Masters*, 223 F.3d at 1086.

11        None of these factors can be shown.  As described above, SCEE does not make, sell, offer for

12    sale or solicit business in California.  SCEE does not sell to consumers in the United States.  SCEE

13    does not have any office or agents or employees in California.  SCEE is not registered to do business

14    or incorporated in California and does not have a telephone listing, business address or bank accounts

15    in this jurisdiction.  Notably, there is nothing in the FAC that suggests otherwise.  The only suggestion

16    alleged in the FAC is the presence of SCEA in California.  However, the presence and activities of a

17    sister corporation that is not the alter ego of SCEE are not sufficient to impose general jurisdiction.[4]

18        The record is clear that SCEE does not have substantial or continuous and systematic contacts

19    with California.  Nor have Plaintiffs alleged any in the First Amended Complaint.  Hence, there is

20    absolutely no basis upon which this Court could exercise general jurisdiction.

21        **C.    There Is No Specific Personal Jurisdiction Because SCEE Has Not Purposefully
              Aimed or Directed Any Activities at California, No Claims Arise Out of Sales by**
22        **SCEE, and Jurisdiction Would Be Unreasonable.**

23        Plaintiffs likewise cannot show that specific personal jurisdiction can be exercised here.  "In

24    _____

[4]  *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.,* 485 F.3d 450, 459 (9th Cir. 2007) ("where a
25    parent and a subsidiary are separate and distinct corporate entities, the presence of one ... in a forum
      state may not be attributed to the other"); *Doe v. Unocal Corp.,* 248 F.3d 915, 925 (9th Cir.2001)
26    ("The existence of a relationship between a parent company and its subsidiaries is not sufficient to
      establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with
27    the forum"); *A.T.&T.*, 94 F.3d at 591 (refusing to impute contacts of the subsidiary to the parent
28    corporation without evidence of domination and control by the parent over the subsidiary).

1  the Ninth Circuit, a court may subject a defendant to specific jurisdiction only when each of three

2  elements exist:  '(1) the nonresident defendant must … purposefully avail[] himself of the privilege of

3  conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the

4  claim must be one which arises out of or result from the defendant's forum-related activities; and

5  (3) the exercise of jurisdiction must be reasonable.'"  *MacConnell v. Schwamm*, No. 00-CV-0439

6  W(LSP), 2000 WL 1409758, at *3 (S.D. Cal. Jul. 25, 2005) (quoting *Panavision Int'l, L.P. v.*

7  *Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (internal quotation marks, ellipses and brackets in

8  original).  "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the

9  defendant of due process of law."  *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th

10  Cir. 1995).  These criteria cannot be established against SCEE.

11

12  **1.    SCEE Has Not Purposefully Availed Itself of California or Expressly Aimed Any Activity at California**

13  Under the first prong of the three-part specific jurisdiction test, Plaintiffs must establish that

14  SCEE either purposefully availed itself of the privilege of conducting activities in California, or

15  purposefully directed its activities towards California.  *See Pebble Beach*, 453 F.3d at 1155-56.

16  Plaintiffs cannot show purposeful availment.  "Evidence of availment is typically action taking place

17  in the forum that invokes the benefits and protections of the law in the forum."  *Id.* at 1155; *see also*

18  *Cybersell*, 130 F.3d at 417, 420 (requiring the defendant to take deliberate action within the forum

19  state).  SCEE is not registered to do business in California, does not maintain any real or tangible

20  property in California, and does not manufacture, sell or market goods or services to consumers in

21  California.  (Andall Decl. ¶ 7, 12, 15-16.)  Plaintiffs cannot point to any conduct by SCEE that

22  establishes purposeful availment because SCEE has not availed itself of the benefits or protections of

23  California law.  *See Pebble Beach*, 453 F.3d at 1155.

24  Plaintiffs also cannot show purposeful direction.  "A showing that a defendant purposefully

25  directed his conduct toward a forum state … usually consists of evidence of the defendant's actions

26  outside the forum state that are directed at the forum, such as the distribution in the forum state of

27  goods originating elsewhere."  *Schwarzenegger*, 374 F.3d at 803.  Those contacts directed at the

28  forum state are evaluated under the *Calder* "effects" test, which requires that "the defendant allegedly

– 9 –

1   have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

2   defendant knows is likely to be suffered in the forum state." *Id.* (quoting *Dole Food Co. v. Watts*, 303

3   F.3d 1104, 1111 (9th Cir. 2002))0.  The intentional act focuses on the "external manifestation of the

4   actor's will and does not include any of its results, even the most direct, immediate, and intended." *Id.*

5   at 806.  The "express aiming" requirement is satisfied only when the defendant "individually targeted"

6   a plaintiff within the forum state.  *See id.* at 807 (after summarizing prior Ninth Circuit cases, the court

7   held that publication of advertisements in Ohio, even if it contained pictures of a California resident

8   that may have harmed him in California, was not expressly aimed at California and instead the ads

9   were expressly aimed at Ohio for consumers in Ohio to purchase the defendant's cars).  Conduct that

10  happens to have an effect in the forum state – even a foreseeable one – does not satisfy the effects test.

11  *Id.* at 804, 807; *see also Pebble Beach Co.*, 453 F.3d at 1158 (internet domain name and passive

12  website alone are not enough to subject a party to jurisdiction, even if the defendant knew of

13  plaintiff's trademark and its California location).  Rather, the Ninth Circuit requires "'something

14  more' than mere foreseeability in order to justify the assertion of personal jurisdiction in California

15  over a [non-resident] defendant." *Id.* at 805.

16          Plaintiffs have not alleged, and cannot allege, any conduct by SCEE that is expressly aimed at

17  California.  Indeed, there are only three allegations in the First Amended Complaint that conceivably

18  even could relate to personal jurisdiction over could SCEE:  (1) that SCEE filed intent-to-use

19  applications in the United States Patent and Trademark Office; (2) that SCEE's sister-company,

20  SCEA, is located in California; and (3) that a website advertises versions of the allegedly infringing

21  games.  None of these allegations, even allowing reasonable inferences in Plaintiffs' favor, establishes

22  purposeful direction.

23

24          a)      **Owning and Filing Trademark Applications Does Not Establish**
                    **Purposeful Direction To California**

25          SCEE's ownership and filing of intent-to-use applications are not intentional acts expressly

26  aimed at California.  "[I]t is *essential in each case that there be some act* by which the defendant

27  purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking

28  the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (emphasis

– 10 –

1   added).  SCEE committed no intentional action by owning trademarks.  Trademark ownership and

2   registration is not considered business activity purposefully directed at a particular jurisdiction.  *See*

3   *Williams,* 432 F. Supp. at 380 (a foreign corporation's ownership of 23 registrations for a trademark

4   used in California does not constitute doing business there); *Love v. The Mail on Sunday*, No. CV05-

5   7798ABCPJWX, 2006 WL 4046170, at *7 (C.D. Cal. Jul. 14, 2006) (same); *see also Advanced*

6   *Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 1996 WL 467293, n.5 (N.D. Cal. Jul. 24, 1996)

7   (ownership of a patent does not support the assertion of personal jurisdiction over a foreign patentee in

8   California).

9         Courts routinely find that passive conduct fails to meet the purposeful direction test.  For

10  example, hosting a passive website is not sufficient to establish purposeful direction.  *See, e.g.*,

11  *Cybersell*, 130 F.3d at 420 (trademark infringement over the internet on a passive website is not

12  sufficient to support personal jurisdiction); *Pebble Beach*, 453 F.3d at 1158 (same).  Ownership of a

13  domain name by itself is also insufficient.  *Pebble Beach*, 453 F.3d at 1159.  National advertising also

14  cannot constitute purposeful direction.  *See Williams*, 432 F. Supp. at 380; *Cascade Corp. v. Hiab-*

15  *Foco AB*, 619 F.2d 36, 37 (9th Cir. 1980) (advertising in a national publication with circulation in the

16  forum state does not support personal jurisdiction).  Listing stock on various exchanges in the United

17  States is insufficient to establish personal jurisdiction.  *Unocal Corp.*, 248 F.3d at 922.  Hence,

18  trademark ownership is not a contact that subjects SCEE to specific personal jurisdiction in California.

19        Nor has SCEE purposefully directed or expressly aimed any act at California by owning and

20  filing intent-to-use applications.  Foreseeable effects on the forum state are insufficient; instead, the

21  Ninth Circuit mandates that the plaintiff show the defendant directed its act intentionally at the forum

22  state to meet the "express aiming" requirement for purposeful direction.  *Schwarzenegger*, 374 F.3d at

23  807.  Moreover, for the "express aiming" requirement, the defendant's purpose may be considered but

24  not the results, not even the most direct or intended results.  *Id.* at 806-07.  Thus, even when a

25  defendant's acts caused harm to Mr. Schwarzenegger in California where he resides, the Ninth Circuit

26  held that personal jurisdiction was lacking because the defendant had not expressly aimed its act at

27  California by circulating advertisements in Ohio using images of Arnold Schwarzenegger.  *Id.* at 807;

28  *see also Pebble Beach,*453 F.3d at 1157.

– 11 –

1    As in *Schwarzenegger*, it would be improper to find purposeful direction simply because

2    SCEE's acts of filing intent-to use applications are said to have consequences in California where

3    Plaintiffs reside.  SCEE's acts of filing intent-to-use applications at the USPTO in Virginia were not

4    expressly aimed at California.  SCEE developed the "BUZZ!" trademarks for use originally in Europe,

5    Middle East, Africa and Oceania.  (Andall Decl. ¶ 20.)  To protect its trademarks, SCEE filed

6    trademark applications for "BUZZ!" first in Europe and then other parts of the world.  (Andall Decl.

7    ¶ 20.)  By filing intent-to-use applications in the United States, SCEE only preserved its trademark

8    rights that SCEE already had created outside the United States.  Such good-faith effort to protect its

9    trademark rights does not subject SCEE to personal jurisdiction.  *See Bancroft & Masters*, 223 F.3d at

10    1089 (the "effects" test is not met if the defendant acted reasonably and in good faith to protect its

11    trademark) (concurrence opinion by Judge Sneed and joined by Judge Trott).  Moreover, filing

12    applications at the USPTO that could provide rights in the United States cannot be considered an act

13    that is specifically targeted at California. *Cf. Unocal Corp.*, 248 F.3d at 922 (listing stock on a United

14    States exchange is not sufficient to exercise personal jurisdiction).

15

16    **b)    SCEA's Presence and Activities in California Are Not SCEE's
       Activities For Purposes of Personal Jurisdiction**

17    Similar to the analysis for general jurisdiction discussed above, SCEE cannot be subject to

18    specific personal jurisdiction in California based on SCEA's presence and activities in California.

19    Courts have refused to exercise specific personal jurisdiction over a non-resident affiliated company

20    or a licensor merely because an affiliate or licensee was located in the forum state or conducted

21    activities in the forum state.[5]  Plaintiffs allege that SCEA has a business address in California and that

22    _____

23    [5] *See, e.g.*, *Holland Am. Line,* 485 F.3d at 459 ("where a parent and a subsidiary are separate and
     distinct corporate entities, the presence of one ... in a forum state may not be attributed to the other");

24    *A.T.&T.*, 94 F.3d at 591; *Red Wing Shoe*, 148 F.3d at 1361 (the defendant's "licensees have extensive
     contacts with [the forum state], but this additional factor is also insufficient to submit [the non-resident

25    defendant] to personal jurisdiction in the state"); *Rano,* 987 F.2d at 588 (9th Cir. 1993) (rejecting
     purposeful availment based on the copyright licensee's profits from the plaintiff's photographs that the

26    licensee knew would eventually be distributed in California); *Williams*, 432 F. Supp. at 380-81
     (refusing to exercise personal jurisdiction over a trademark owner based on a licensing agreement it

27    had with U.S. companies that had numerous contacts with California); *Dex Prods., Inc. v.*

28    *Houghteling*, No. C 05-05126 SI, 2006 WL 1751903, at *3 (N.D. Cal. Jun. 23, 2006) (refusing to
     Continued on the next page

1    SCEA sells and promotes allegedly infringing products in California.  Plaintiffs cannot conflate the

2    two separate companies of SCEE and SCEA.  SCEA most definitely is not SCEE's alter ego.

3            Moreover, even assuming arguendo that SCEE receives a financial benefit 0from SCEA's use

4    of "BUZZ!" trademarks, mere receipt of financial benefits from an affiliated company or even a

5    licensee is insufficient to subject the recipient to personal jurisdiction.  *See Rano*, 987 F.2d at 588; *Red*

6    *Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361-62 (Fed. Cir. 1998) (citing

7    *World-Wide Volkswagen*, 444 U.S. at 299).  If financial benefit was the test, then every trademark

8    owner or licensor would be amenable to personal jurisdiction in every state in which their trademark

9    or licensed right was exercised.  *Rano*, 987 F.2d at 588 (rejecting the plaintiff's argument that profit

10   from a copyright license would be sufficient for personal jurisdiction because such argument "if

11   accepted, would render [the licensor] and other foreign owners of art who sell their products to

12   publications, amenable to personal jurisdiction in every state in which their art eventually is

13   displayed.").  Hence, SCEE cannot be subject to specific personal jurisdiction based on SCEA's

14   location and activities in California.

15

16                          c)    **Owning a Promotional Website Does Not Constitute An Act Purposefully Directed at California**

17           Contrary to what Plaintiffs alleged in the First Amended Complaint, SCEE has never promoted

18   or advertised the allegedly infringing products on <http://www.us.playstation.com>[6] or in the United

19   States.  SCEE hosts a different website, that does not allow consumers to purchase any of SCEE's

20   products; SCEE's website merely provides information about SCEE's products for the countries in the

21   EMAO territory.  Alleged trademark infringement based on the alleged use of the plaintiff's trademark

22   on a passive website is insufficient to establish purposeful direction.  *Cybersell*, 130 F.3d at 420; *see*

23   *also Pebble Beach*, 453 F.3d at 1158.  The Ninth Circuit specifically warned that finding personal

24   jurisdiction in similar circumstances would allow "every complaint arising out of alleged trademark

25   Continued from the previous page

exercise personal jurisdiction over a licensor of patent rights used in California where the plaintiff did

26   not show that the licensor had any involvement with the licensee's decision to sell the product in

California); *F. Hoffman-La Roche*, 130 Cal. App. 4th at 802-03 (contacts of U.S. companies could not

27   be attributed to Swiss affiliates where there was no evidence of control of day-to-day operations).

[6] This website does not allow consumers to purchase products online.  (Cahn Decl. ¶ 3.)

28

– 13 –

1   infringement on the Internet would automatically result in personal jurisdiction wherever the

2   plaintiff's principal place of business is located." *Cybersell*, 130 F.3d at 420. Plaintiffs' potential

3   theories to support personal jurisdiction would do exactly what the Ninth Circuit forewarned and

4   prohibited – making the foreign owners of allegedly confusing or similar mark subject to personal

5   jurisdiction wherever plaintiffs are located. That should not be allowed.

6              **2.    Plaintiffs Cannot Establish the "Arise Out Of" Requirement For Specific
                       Personal Jurisdiction**

7

8              Even if Plaintiffs could establish purposeful availment or purposeful direction (which they

9   cannot), Plaintiffs still cannot show that their claims arise out of or result from any activity in

10  California by SCEE. The Ninth Circuit applies a "but for" test to determine whether a given cause of

11  action arises out of the defendant's forum-related activities. *Unocal Corp.*, 248 F.3d at 924. All of

12  Plaintiffs' claims purport to arise out of allegedly infringing sales of goods in the United States. (FAC

13  at 1, 8, 10-12.) For all of Plaintiffs' claims, Plaintiffs allege that "Defendants" (without specifying

14  which defendant) "used and are using the BUZZ Marks" and that the "goods and services offered

15  and/or sold by Defendants … are moving and will continue to move through the same channels of

16  trade." (FAC ¶¶ 47, 48; *see also Id.* ¶¶ 67, 72, 76.)  However, SCEE has never sold nor offered to sell

17  any goods or services in California or the United States. (Andall Decl. ¶ 6.) SCEE also does not

18  manufacture, solicit sales, promote, advertise or market the "BUZZ!" marks or its versions of the

19  video game software in California. (*Id.* ¶¶ 6, 14-16.) Thus, Plaintiffs have not alleged and cannot

20  show any California-related activities by SCEE out of which their trademark claims arise.

21             **3.    Asserting Personal Jurisdiction over SCEE Would Be Unreasonable Here**

22             Even if purposeful availment were shown, it still must be shown that it is reasonable to subject

23  SCEE to personal jurisdiction in California. Determining reasonableness turns on seven factors:

24  (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on

25  the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the

26  defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient

27  judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in

28  convenient and effective relief; and (7) the existence of an alternative forum. *World-Wide*

– 14 –

1  *Volkswagen*, 444 U.S. at 292.  None of the factors is dispositive in itself; the Court must balance all

2  seven.  *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993).  These factors

3  mandate the conclusion that exercising specific personal jurisdiction over SCEE in California would

4  be unreasonable.

5          As discussed above, the first factor weighs heavily against personal jurisdiction because SCEE

6  did not purposefully avail or direct any activities at California.  Second, the burden on SCEE would be

7  substantial since SCEE is a UK company and has no presence in California.  The third factor is neutral

8  because any sovereignty conflicts are best resolved through choice-of-law analysis.  The fourth factor

9  likewise is neutral because California has no special interest in Plaintiffs' claims, which are national in

10 scope.  California has expressed reservations about assuming jurisdiction when the forum activities

11 with the non-resident are insubstantial.  *See Floyd J. Harkness Co. v. Amezcua*, 60 Cal. App. 3d 687,

12 694 (1976).  The fifth and seventh factors weigh against jurisdiction because SCEA will remain in the

13 case and, in the unlikely event that Plaintiffs prevail, they would be able to obtain relief against SCEA.

14 Courts have given little, if any, weight to the sixth factor.  *See Core-Vent*, 11 F.3d at 1490 ("neither

15 the Supreme Court nor our court has given much weight to inconvenience to the plaintiff").  Hence, it

16 also is unreasonable for SCEE to be subject to personal jurisdiction in California.

17 **IV.    CONCLUSION**

18         SCEE does not manufacture, sell, offer for sell, export or market the allegedly infringing

19 products in California or elsewhere in the United States.  Plaintiffs have not alleged and cannot show

20 sufficient contacts to warrant exercise of personal jurisdiction.  Consequently, SCEE respectfully

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

– 15 –

1  requests the Court to grant its motion to dismiss for lack of personal jurisdiction and insufficiency of

2  service of process.

3

4  DATED:  September 12, 2008          Respectfully submitted,

5                                      TOWNSEND AND TOWNSEND AND CREW LLP

6

7                                      By:  /s/ Timothy R. Cahn
                                          JAMES G. GILLILAND, JR.  (State Bar No. 107988)
8                                          jggilliland@townsend.com
                                          TIMOTHY R. CAHN  (State Bar No. 162136)
9                                          trcahn@townsend.com
                                          MEGAN M. CHUNG  (State Bar No. 232044)
10                                         mmchung@townsend.com

11                                     Attorneys for Defendant
                                       SONY COMPUTER ENTERTAINMENT EUROPE LTD.
12

13  61489383 v1

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Memorandum ISO Renewed Motion to Dismiss for Lack of Personal Jurisdiction
Case No. 08 CV 0122 W LSP