# EXHIBIT A

1   TOWNSEND AND TOWNSEND AND CREW LLP
    JAMES G. GILLILAND, JR. (State Bar No. 107988)
2   jggilliland@townsend.com
    TIMOTHY R. CAHN (State Bar No. 162136)
3   trcahn@townsend.com
    MEGAN M. CHUNG (State Bar No. 232044)
4   mmchung@townsend.com
    Two Embarcadero Center, 8th Floor
5   San Francisco, CA 94111
    Telephone: (415) 576-0200
6   Facsimile: (415) 576-0300

7   Attorneys for Defendant
    SONY COMPUTER ENTERTAINMENT EUROPE LTD.

8

9                UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11   BUZZTIME ENTERTAINMENT, INC. and NTN BUZZTIME, INC., | **Case No. 08 CV 0122 W LSP** |
| 12           Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SONY COMPUTER ENTERTAINMENT EUROPE** |
| 13         v. | **LTD.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND** |
| 14 | **INSUFFICIENCY OF PROCESS** |
| 15   SONY COMPUTER ENTERTAINMENT EUROPE LTD. and SONY COMPUTER ENTERTAINMENT AMERICA INC., | |
| 16         Defendants. | **NO ORAL ARGUMENT PURSUANT TO LOCAL RULE** |
| 17 | |
| 18   SONY COMPUTER ENTERTAINMENT | Date: June 23, 2008 Time: 10:00 a.m. |
| 19   AMERICA INC., |        Courtroom 7, 3rd Floor        Hon. Thomas J. Whelan |
| 20         Counter-Complainant, | |
| 21         v. | |
| 22   BUZZTIME ENTERTAINMENT, INC. and NTN BUZZTIME, INC., | |
| 23         Counter-Defendants. | |
| 24 | |

25

26

27

28

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................... 1

II.  STATEMENT OF FACTS ............................................................................. 3

     A.   The First Amended Complaint And Jurisdictional Allegations ...................... 3

     B.   SCEE Is A Distinct Foreign Corporation That Conducts  No
          Advertising or Sales in California or in the United States. ............................ 4

     C.   SCEE Has No Other Jurisdictionally Significant Contacts with
          California. ...................................................................................................... 5

III. ARGUMENT ................................................................................................. 5

     A.   Plaintiffs Must Prove Personal Jurisdiction With Particular Facts That
          Establish Necessary Ties Between SCEE and California ............................... 5

     B.   Plaintiffs Have Not Alleged And Cannot Prove General Jurisdiction
          Because SCEE Does Not Maintain Continuous and Systematic
          Contacts With California ................................................................................ 6

     C.   There Is No Specific Personal Jurisdiction Because SCEE Has Not
          Purposefully Aimed or Directed Any Activities at California, No
          Claims Arise Out of Sales by SCEE, and Jurisdiction Would Be
          Unreasonable. ................................................................................................ 7

          1.   SCEE Has Not Purposefully Availed Itself of California or
               Expressly Aimed Any Activity at California ............................................ 8

               a)   Owning and Filing Trademark Applications Does Not
                    Establish Purposeful Direction To California ........................... 9

               b)   SCEA's Presence and Activities in California Are Not
                    SCEE's Activities For Purposes of Personal
                    Jurisdiction ........................................................................... 11

               c)   Owning a Promotional Website Does Not Constitute
                    An Act Purposefully Directed at California ............................ 12

          2.   Plaintiffs Cannot Establish the "Arise Out Of" Requirement
               For Specific Personal Jurisdiction ........................................................ 13

          3.   Asserting Personal Jurisdiction over SCEE Would Be
               Unreasonable Here ............................................................................... 13

     D.   Plaintiffs Failed To Serve SCEE In a Manner Prescribed by Rule
          4(h)(2) .......................................................................................................... 14

IV.  CONCLUSION ........................................................................................... 15

1

## TABLE OF AUTHORITIES

2
Page

3    **Cases**

4    *A.T.&T. v. Compagnie Bruxelles Lambert,*
       94 F.3d 586 (9th Cir. 1996) ............................................................... 2, 7, 11

5    *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.,*
       1996 WL 467293 (N.D. Cal. Jul. 24, 1996) ....................................... 10

6

7    *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,*
       223 F.3d 1082 (9th Cir. 2000) .............................................................. 7, 11

8    *Brockmeyer v. May,*
       383 F.3d 798 (9th Cir. 2004) ............................................................... 14

9

10   *Cascade Corp. v. Hiab-Foco AB,*
       619 F.2d 36 (9th Cir. 1980) ................................................................. 10

11   *Core-Vent Corp. v. Nobel Indus. AB,*
       11 F.3d 1482 (9th Cir. 1993) ............................................................... 13, 14

12

13   *Cybersell, Inc. v. Cybersell, Inc.,*
       130 F.3d 414 (9th Cir. 1997) ............................................................... 5, 8, 10, 12

14   *Dex Prods., Inc. v. Houghteling,*
       No. C 05-05126 SI, 2006 WL 1751903 (N.D. Cal. Jun. 23, 2006) ......... 11

15

16   *Doe v. Unocal Corp.,*
       248 F.3d 915 (9th Cir.2001) ................................................................ 7, 10, 11, 13

17   *Dole Food Co. v. Watts,*
       303 F.3d 1104 (9th Cir. 2002) ............................................................. 9

18

19   *Emery v. Wood Indus., Inc.,*
       No. 98-480-M, 2001 U.S. Dist. LEXIS 1016 (D.N.H. Jan. 17, 2001) ......... 15

20   *F. Hoffman-La Roche, Ltd.,*
       130 Cal. App. 4th 782 (2005) ............................................................. 2, 11

21

22   *Floyd J. Harkness Co. v. Amezcua,*
       60 Cal. App. 3d 687 (1976) ................................................................. 14

23   *Flynt Distrib. Co. v. Harvey,*
       734 F.2d 1389 (9th Cir. 1984) ............................................................. 2

24

25   *Freudensprung v. Offshore Technical Servs.,*
       379 F.3d 327 (5th Cir. 2004) ............................................................... 2

26   *Hanson v. Denckla,*
       357 U.S. 235 (1958) ............................................................................ 9

27

28   *Helicopteros Nacionales de Colombia, S.A. v. Hall,*
       466 U.S. 408 (1984) ............................................................................ 6

– ii –

**TABLE OF AUTHORITIES (con't)**

Page

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.,*
    485 F.3d 450 (9th Cir. 2007) ................................................................ 7, 11

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945) ................................................................ 6, 7

*Love v. The Mail on Sunday,*
    No. CV05-7798ABCPJWX, 2006 WL 4046170 (C.D. Cal. Jul. 14, 2006) ............ 10

*MacConnell v. Schwamm,*
    No. 00-CV-0439 W(LSP) ................................................................ 8

*Markey v. Kudelski S.A.,* No. 06-CV-1300 W(RBB), 2007 WL 1110787 (S.D. Cal.
    Apr. 3, 2007) ................................................................ 5, 6

*Omeluk v. Langsten Slip & Batbyggeri A/S,*
    52 F.3d 267 (9th Cir. 1995) ................................................................ 8

*Panavision Int'l, L.P. v. Toeppen,*
    141 F.3d 1316 (9th Cir. 1998) ................................................................ 6, 8

*Pebble Beach Co. v. Caddy,*
    453 F.3d 1151 (9th Cir. 2006) ................................................................ passim

*Prewitt Enter., Inc. v. Org. of Petroleum Exporting Countries,*
    353 F.3d 916 (11th Cir. 2003) ................................................................ 15

*Rano v. Sipa Press, Inc.,*
    987 F.2d 580 (9th Cir. 1993) ................................................................ 6, 11, 12

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
    148 F.3d 1355 (Fed. Cir. 1998) ................................................................ 12

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2004) ................................................................ 6, 7, 8, 10

*Williams v. Canon, Inc.,*
    432 F. Supp. 376 (C.D. Cal. 1977) ................................................................ 2, 10, 11

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980) ................................................................ 5, 12, 13

**Statutes**
Cal. Civ. Proc. Code § 410.10 ................................................................ 6

**Rules**
Fed. R. Civ. P. 12(b)(2) ................................................................ 5

1

**TABLE OF AUTHORITIES (con't)**

2                                                                                    Page

3   Fed. R. Civ. P. 12(b)(5) ........................................................................ 14

4   Fed. R. Civ. P. 4(h) .............................................................................. 14

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Plaintiffs claim in their First Amended Complaint ("FAC") that Defendants Sony Computer Entertainment Europe Ltd. ("SCEE") and Sony Computer Entertainment America Inc. ("SCEA") promote and sell in the United States video games used with the PlayStation® 2 system — *e.g.*, the "BUZZ! the Mega Quiz" game — that allegedly infringe Plaintiffs' purported trademark rights in "buzztime" and other alleged marks.  (FAC ¶¶ 1, 6-11, 27-33.)  SCEE, a UK company, brings this motion to dismiss for lack of personal jurisdiction because SCEE *does not manufacture, sell, or promote* the allegedly infringing video games in California or elsewhere in the United States. (Declaration of Hogarth Andall in Support of SCEE's Motion to Dismiss ("Andall Decl.") ¶ 6.)  In fact, SCEE has never sold or promoted *any* goods in California or in the United States for the simple reason that SCEE's territory extends only to Europe and other regions outside the United States (*i.e.*, Europe, the Middle East, Africa and Oceania (collectively, "EMAO")) and SCEE only sells versions of PlayStation® 2 video games that are electronically compatible with the PAL format computer entertainment systems and televisions used in such foreign countries.  (Andall Decl. ¶ 4.)

Having attempted to sue in California a foreign company that has no sales or other presence in California, Plaintiffs simply cannot meet their burden to demonstrate sufficient contacts between SCEE and California to sustain jurisdiction over it.  SCEE maintains no office or other facility in California, has no employees or sales representatives, owns no property or other assets here, and is not even registered to do business in California.  (Andall Decl. ¶¶ 7-8, 10, 14.)  SCEE, not surprisingly, directs no advertising at California consumers because it does not *sell* to California consumers, nor does SCEE even offer for sale the versions of video game software that are compatible with the PlayStation® 2 computer entertainment systems manufactured and marketed for the United States. (Andall Decl. ¶ 4 .)  SCEE owns a  web site -- <www.buzzthegame.com > -- that provides consumers with information about "BUZZ! The Mega Quiz" and other games available for the EMAO market, but the site does not facilitate online purchases by consumers and therefore is not a "contact" with California that would support personal jurisdiction over SCEE.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156-57 (9th Cir. 2006).  In any event, SCEE's online video game advertisements are directed at foreign, not Californian, consumers and advertise games compatible only with the EMAO version

-1-

1   of the PlayStation® 2 computer entertainment system, which is different from the American version

2   of the PlayStation® 2 computer entertainment system. (Andall Decl. ¶¶ 4-6.)

3         That SCEA markets and sells the accused games in the United States can in no way be imputed

4   to SCEE. SCEE and SCEA are distinct, independent corporations, each owned by a common

5   corporate parent that is located and incorporated in Japan. (Andall Decl. ¶ 2.) Hornbook law clearly

6   provides that a subsidiary or other affiliated company's contacts with the forum are not imputed to the

7   foreign affiliate absent a showing that the affiliate is acting as the foreign company's alter ego "'so as

8   to justify disregard of the corporate entity.'" *A.T.&T. v. Compagnie Bruxelles Lambert*, 94 F.3d 586,

9   591 (9th Cir. 1996) (quoting *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984));

10  *Freudensprung v. Offshore Technical Servs.*, 379 F.3d 327, 346 (5th Cir. 2004); *F. Hoffman-La*

11  *Roche, Ltd.*, 130 Cal. App. 4th 782, 799-800 (2005). Plaintiffs here do not, and certainly cannot,

12  allege that SCEA is the alter ego of SCEE. Indeed, SCEE does not exercise any of the control over

13  SCEA necessary to impute to it SCEA's California contacts. (Andall Decl. ¶ 2.) Accordingly, SCEE

14  can only be subject to jurisdiction in California based on *SCEE's* cognizable contacts with the state,

15  which are nil.

16        Furthermore, that SCEA uses SCEE's "BUZZ!" trademark in the United States and that SCEE

17  filed intent-to-use applications with the United States Patent and Trademark Office ("USPTO") in no

18  way establishes personal jurisdiction over SCEE in California. It is well-established that, for personal

19  jurisdiction purposes, the "use of a trademark by a corporation's subsidiary is not a transaction of

20  business by the parent company." *Williams v. Canon, Inc.*, 432 F. Supp. 376, 380 (C.D. Cal. 1977).

21  Nor, then, can a U.S. affiliate's use in California of a foreign affiliate's trademark establish that the

22  foreign affiliate has contacts with, or is doing business in, the State of California since the relationship

23  between affiliates is even more remote than a child-parent relationship. Similarly, a foreign owner's

24  registration of trademarks with the United States Patent and Trademark Office for use by an affiliated

25  company does not constitute cognizable contacts with a state sufficient to confer jurisdiction. *See*

26  *Williams*, 432 F. Supp. at 379 (foreign parent not subject to personal jurisdiction in California even

27  though the foreign company owned and registered 23 trademarks that were used in California by its

28  subsidiary).

– 2 –

1    Accordingly, Plaintiffs cannot meet their burden to show sufficient jurisdictional contacts by

2    SCEE with California. In addition, Plaintiffs have failed to properly serve SCEE. Hence, SCEE

3    respectfully requests that the Court grant its motion to dismiss SCEE from the suit.

4    **II.    STATEMENT OF FACTS**

5        **A.    The First Amended Complaint And Jurisdictional Allegations**

6        Plaintiffs filed their original complaint against only SCEE on January 23, 2008, but never

7    served it. Instead, on February 22, 2008, Plaintiffs filed a First Amended Complaint ("FAC"), adding

8    SCEA as a defendant and allegations regarding SCEA. Plaintiffs served SCEA with a copy of the

9    FAC on February 28, 2008. (Dkt. No. 6.) On April 4, 2008, Plaintiffs' process server hand delivered

10   a copy of the FAC to one of SCEE's employees at SCEE's London office. Later, on or around April

11   29, 2008, SCEE received by regular mail another copy of the FAC.

12       The FAC alleges that Plaintiffs own the so-called "Buzztime Marks" and that such marks are

13   purportedly infringed by the promotion and sale in the United States of video games that are used with

14   "PS2", which is the PlayStation® 2 computer entertainment system. (FAC ¶¶ 1, 6-11, 32, 34.) The

15   allegedly infringing games are:  1) BUZZ! The Mega Quiz; 2) BUZZ! Junior Jungle Party; 3) BUZZ!

16   Junior RoboJam; and 4) BUZZ! The Hollywood Quiz. (FAC ¶ 32.)

17       Plaintiffs acknowledge in the FAC that SCEE is a foreign corporation "organized under the

18   laws of the United Kingdom." (FAC ¶ 3.) Despite recognizing that SCEE is a distinct, foreign

19   corporation, Plaintiffs proceed in the FAC to impliedly attribute SCEA's U.S. activities to SCEE by

20   repeatedly framing the FAC's allegations as against "Defendants" jointly. The FAC, for instance,

21   claims erroneously that "Defendants" sell the allegedly infringing games in large U.S. retail stores,

22   such as Walmart and Target, including at stores in this judicial district. (FAC ¶¶ 9, 13, 33.) Plaintiffs

23   also wrongly allege that "Defendants" promote the games "on the internet at

24   *http://www.us.playstation.com/*." (FAC ¶ 6; *see also id.* ¶¶ 7, 32, 34.) The FAC further recounts that

25   SCEE filed three intent-to-use applications with the United States Patent and Trademark Office for the

26   term "BUZZ," on December 1, 2004, May 9, 2005, and May 26, 2005. (FAC ¶¶ 8, 27-29.) There are

27   no other allegations in the FAC that conceivably could be construed as relating to personal

28   jurisdiction.

**B.    SCEE Is A Distinct Foreign Corporation That Conducts
No Advertising or Sales in California or in the United States.**

SCEE is a United Kingdom company with its principal place of business in England.  SCEE is distinct and separate from SCEA, with separate headquarters, officers and board of directors.  (Andall Decl. ¶ 2.)  SCEE does not control or direct SCEA's day-to-day operations nor vice versa. (*Id.* ¶ 2.)  SCEE does not own stock in SCEA. (*Id.* ¶ 2.)  SCEE and SCEA each are wholly-owned by Sony Computer Entertainment Inc., a corporation that is located and incorporated in Japan. (*Id.* ¶ 2.)

SCEE is engaged in the business of marketing and distributing video game console hardware and peripheral accessories in the EMAO countries.  (Andall Decl. ¶ 3.)  Among the products that SCEE sells in its territory is the EMAO version of the PlayStation® 2 computer entertainment system, which features a controller and software designed for the playing of video game software on various formats, including CDs, DVDs, music CDs and DVD movies. (*Id.* ¶ 3.)  SCEE also develops, publishes, markets, and distributes in its territory video game software for use with the EMAO PlayStation® 2 system. (*Id.* ¶ 4.)  SCEE develops and markets only the versions of "BUZZ!" video games that are restricted for use with systems technologically designed for the EMAO countries. (*Id.* ¶ 4.)

These territorial restrictions ensure that consumers in a specific region of the world will only purchase video game software that functions with the PlayStation® 2 systems available in their regions.  Due to computer coding differences among video game consoles manufactured for different regions of the world, SCEE's video game software manufactured and marketed for countries in SCEE's region will not be compatible with PlayStation® 2 systems manufactured and marketed for the United States.  (Andall Decl. ¶ 4.)  Just as videotapes and DVDs are encoded for specific regions of the world, video game software for PlayStation® 2 systems are region-specific for the various countries in the EMAO region and will not play on the PlayStation® 2 systems sold in the United States. (*Id.* ¶ 4.)  Consequently, SCEE does not manufacture, market or sell any video game software, or other products, in California or elsewhere in the United States.  Likewise, SCEE has never manufactured, marketed or sold the versions of the "BUZZ!" software that has been available for purchase to California consumers. (*Id.* ¶ 5.)

– 4 –

1    Since SCEE sells its products exclusively in countries outside the United States, SCEE does

2  not direct any of its advertising toward California residents, or advertise in any publications or media

3  that are directed primarily toward California residents. (*Id.* ¶ 16.) SCEE hosts websites that are

4  publicly available, but none of them allows consumers to purchase SCEE's products. Furthermore,

5  the products on those websites are made specifically for consumers in SCEE's territory and are not

6  compatible with PlayStation® 2 systems used in the United States. (*Id.* ¶ 17.) SCEE, thus, has not

7  committed any of the alleged promotional and sale activities in the United States that form the basis

8  for Plaintiffs' trademark claims in the First Amended Complaint.[1]

9    **C.    SCEE Has No Other Jurisdictionally Significant Contacts with California.**

10    SCEE does not have any presence and does not do any business in California. SCEE is not

11  registered to do business in California and does not have a registered agent in California. (Andall

12  Decl. ¶ 7.) SCEE does not have any employees, officers or directors who reside in California. SCEE

13  does not have any sales agents in California. (*Id.* ¶ 10.) SCEE does not own or have any interest in

14  real property in California, nor does it have any bank accounts or other tangible personal property in

15  California. (*Id.* ¶ 12.) SCEE does not have any offices or facilities in California, and has no telephone

16  listing or mailing address in California. (*Id.* ¶ 13.)

17  **III.    ARGUMENT**

18    **A.    Plaintiffs Must Prove Personal Jurisdiction With Particular Facts That Establish
19         Necessary Ties Between SCEE and California**

20    A court must dismiss a defendant when the court lacks jurisdiction over that person. *See* Fed.

21  R. Civ. P. 12(b)(2); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980);

22  *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997); *Markey v. Kudelski S.A.*, No. 06-

23  CV-1300 W(RBB), 2007 WL 1110787, at *1 (S.D. Cal. Apr. 3, 2007). Although the defendant is the

24

25  [1]    Plaintiffs allege that SCEE marketed the allegedly infringing games on various webpages from
    <http://www.us.playstation.com> website and sold, offered for sale, or distributed the allegedly
26  infringing games in the United States. (FAC. ¶¶ 6-7, 9, 32-34, 39-40, 44, 48, 58-59, 65, 70, 76.) The
    website and various webpages referenced in the FAC from <http://www.us.playstation.com> are not
27  SCEE's. (Andall Decl. ¶ 18.) The website <http://www.us.playstation.com> is owned by defendant
    SCEA. (*See id.* ¶ 18; Declaration of Timothy R. Cahn ("Cahn Decl.") at ¶ 2.)
28

1  moving party in a motion to dismiss, the plaintiff bears the burden of proof on the necessary

2  jurisdictional facts to show that jurisdiction is proper. *See, e.g., Schwarzenegger v. Fred Martin*

3  *Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Markey*, 2007 WL 1110787, at *1. When a defendant

4  responds to a complaint with a motion to dismiss with written materials and there is no evidentiary

5  hearing, the plaintiff must make at least a prima facie showing of personal jurisdiction. *See Markey*,

6  2007 WL 1110787, at *1. "In this context, a 'prima facie' showing means that plaintiff has produced

7  admissible evidence that, if believed, would be sufficient to establish the existence of personal

8  jurisdiction." *Id.* This burden is higher on Plaintiffs who seek to establish personal jurisdiction

9  against SCEE, a non-U.S. resident, as compared to a citizen from a sister state. *Rano v. Sipa Press,*

10  *Inc.*, 987 F.2d 580, 588 (9th Cir. 1993).

11        Since California's long-arm statute is coextensive with the limits of Due Process Clause,

12  Plaintiffs have to show that the requirements of due process are satisfied. *See* Cal. Civ. Proc. Code §

13  410.10; *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998). The exercise of

14  personal jurisdiction over a foreign corporation such as SCEE violates the protections created by the

15  Due Process Clause unless the foreign corporation has sufficient "minimum contacts" with the forum

16  state (California) such that "the maintenance of the suit does not offend traditional notions of fair play

17  and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation

18  marks omitted). The "minimum contacts" requirement may be met in one of two ways: 1) by

19  showing that SCEE has "continuous and systematic" contacts with the forum state such that a court

20  may exercise "general jurisdiction" over the foreign defendant (*see Helicopteros Nacionales de*

21  *Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984)); or 2) by showing that SCEE has purposefully

22  directed its activities at California and that Plaintiffs' claims arise from such activities, such that this

23  Court may exercise "specific jurisdiction." *Schwarzenegger*, 374 F.3d at 801-02.

24        **B.**    **Plaintiffs Have Not Alleged And Cannot Prove General Jurisdiction Because**

25                **SCEE Does Not Maintain Continuous and Systematic Contacts With California**

26        SCEE does not have substantial or continuous and systematic contacts with California to

27  warrant exercise of general jurisdiction. For general jurisdiction to exist over a foreign defendant like

28  SCEE, the defendant must have "continuous corporate operations" in California that are "so

— 6 —

1  substantial and of such a nature as to justify suit against it on causes of action arising from dealings

2  entirely distinct from those activities." *Int'l Shoe*, 326 U.S. at 318. The Ninth Circuit requires

3  "substantial" or "continuous and systematic" contacts that "approximate physical presence" in the

4  forum state. *Schwarzenegger*, 374 F.3d at 801 (citing *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,

5  223 F.3d 1082, 1086 (9th Cir. 2000)). "Factors to be taken into consideration are whether the

6  defendant makes sales, solicits or engages in business in the state, serves the state's markets,

7  designates an agent for service of process, holds a license, or is incorporated there." *Bancroft &*

8  *Masters*, 223 F.3d at 1086.

9       None of these factors can be shown. As described above, SCEE does not make, sell, offer for

10  sale or solicit business in California. SCEE does not sell to consumers in the United States. SCEE

11  does not have any office or agents or employees in California. SCEE is not registered to do business

12  or incorporated in California and does not have a telephone listing, business address or bank accounts

13  in this jurisdiction. Notably, there is nothing in the FAC that suggests otherwise. The only suggestion

14  alleged in the FAC is the presence of SCEA in California. However, the presence and activities of a

15  sister corporation that is not the alter ego of SCEE are not sufficient to impose general jurisdiction.[2]

16       The record is clear that SCEE does not have substantial or continuous and systematic contacts

17  with California. Nor have Plaintiffs alleged any in the First Amended Complaint. Hence, there is

18  absolutely no basis upon which this Court could exercise general jurisdiction.

19       **C.   There Is No Specific Personal Jurisdiction Because SCEE Has Not Purposefully
            Aimed or Directed Any Activities at California, No Claims Arise Out of Sales by**
20       **SCEE, and Jurisdiction Would Be Unreasonable.**

21       Plaintiffs likewise cannot show that specific personal jurisdiction can be exercised here. "In

22  the Ninth Circuit, a court may subject a defendant to specific jurisdiction only when each of three

23  elements exist: '(1) the nonresident defendant must ... purposefully avail[] himself of the privilege of

24  _____
    [2]   *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) ("where
25  a parent and a subsidiary are separate and distinct corporate entities, the presence of one ... in a forum
    state may not be attributed to the other"); *Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir.2001)
26  ("The existence of a relationship between a parent company and its subsidiaries is not sufficient to
    establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with
27  the forum"); *A.T.&T.*, 94 F.3d at 591 (refusing to impute contacts of the subsidiary to the parent
    corporation without evidence of domination and control by the parent over the subsidiary).
28

1   conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the

2   claim must be one which arises out of or result from the defendant's forum-related activities; and

3   (3) the exercise of jurisdiction must be reasonable.'" *MacConnell v. Schwamm*, No. 00-CV-0439

4   W(LSP), 2000 WL 1409758, at *3 (S.D. Cal. Jul. 25, 2005) (quoting *Panavision Int'l, L.P. v.*

5   *Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (internal quotation marks, ellipses and brackets in

6   original). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the

7   defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th

8   Cir. 1995). These criteria cannot be established against SCEE.

9
                    **1.    SCEE Has Not Purposefully Availed Itself of California or Expressly**
10                          **Aimed Any Activity at California**

11           Under the first prong of the three-part specific jurisdiction test, Plaintiffs must establish that

12   SCEE either purposefully availed itself of the privilege of conducting activities in California, or

13   purposefully directed its activities towards California. *See Pebble Beach*, 453 F.3d at 1155-56.

14   Plaintiffs cannot show purposeful availment. "Evidence of availment is typically action taking place

15   in the forum that invokes the benefits and protections of the law in the forum." *Id.* at 1155; *see also*

16   *Cybersell*, 130 F.3d at 417, 420 (requiring the defendant to take deliberate action within the forum

17   state). SCEE is not registered to do business in California, does not maintain any real or tangible

18   property in California, and does not manufacture, sell or market goods or services to consumers in

19   California. (Andall Decl. ¶ 7, 12, 15-16.)  Plaintiffs cannot point to any conduct by SCEE that

20   establishes purposeful availment because SCEE has not availed itself of the benefits or protections of

21   California law. *See Pebble Beach*, 453 F.3d at 1155.

22           Plaintiffs also cannot show purposeful direction. "A showing that a defendant purposefully

23   directed his conduct toward a forum state ... usually consists of evidence of the defendant's actions

24   outside the forum state that are directed at the forum, such as the distribution in the forum state of

25   goods originating elsewhere." *Schwarzenegger*, 374 F.3d at 803. Those contacts directed at the

26   forum state are evaluated under the *Calder* "effects" test, which requires that "the defendant allegedly

27   have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

28   defendant knows is likely to be suffered in the forum state." *Id.* (quoting *Dole Food Co. v. Watts*, 303

-8-

1    F.3d 1104, 1111 (9th Cir. 2002))0.  The intentional act focuses on the "external manifestation of the

2    actor's will and does not include any of its results, even the most direct, immediate, and intended." *Id.*

3    at 806.  The "express aiming" requirement is satisfied only when the defendant "individually targeted"

4    a plaintiff within the forum state.  *See id.* at 807 (after summarizing prior Ninth Circuit cases, the court

5    held that publication of advertisements in Ohio, even if it contained pictures of a California resident

6    that may have harmed him in California, was not expressly aimed at California and instead the ads

7    were expressly aimed at Ohio for consumers in Ohio to purchase the defendant's cars).  Conduct that

8    happens to have an effect in the forum state – even a foreseeable one – does not satisfy the effects test.

9    *Id.* at 804, 807; *see also Pebble Beach Co.*, 453 F.3d at 1158 (internet domain name and passive

10   website alone are not enough to subject a party to jurisdiction, even if the defendant knew of

11   plaintiff's trademark and its California location).  Rather, the Ninth Circuit requires "'something

12   more' than mere foreseeability in order to justify the assertion of personal jurisdiction in California

13   over a [non-resident] defendant." *Id.* at 805.

14        Plaintiffs have not alleged, and cannot allege, any conduct by SCEE that is expressly aimed at

15   California.  Indeed, there are only three allegations in the First Amended Complaint that conceivably

16   even could relate to personal jurisdiction over could SCEE:  (1) that SCEE filed intent-to-use

17   applications in the United States Patent and Trademark Office; (2) that SCEE's sister-company,

18   SCEA, is located in California; and (3) that a website advertises versions of the allegedly infringing

19   games.  None of these allegations, even allowing reasonable inferences in Plaintiffs' favor, establishes

20   purposeful direction.

21
22        **a)    Owning and Filing Trademark Applications Does Not Establish
               Purposeful Direction To California**

23        SCEE's ownership and filing of intent-to-use applications are not intentional acts expressly

24   aimed at California.  "[I]t is *essential in each case that there be some act* by which the defendant

25   purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking

26   the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (emphasis

27   added).  SCEE committed no intentional action by owning trademarks.  Trademark ownership and

28   registration is not considered business activity purposefully directed at a particular jurisdiction. *See*

– 9 –

1   *Williams,* 432 F. Supp. at 380 (a foreign corporation's ownership of 23 registrations for a trademark

2   used in California does not constitute doing business there); *Love v. The Mail on Sunday,* No. CV05-

3   7798ABCPJWX, 2006 WL 4046170, at *7 (C.D. Cal. Jul. 14, 2006) (same); *see also Advanced*

4   *Cardiovascular Sys., Inc. v. Medtronic, Inc.,* 1996 WL 467293, n.5 (N.D. Cal. Jul. 24, 1996)

5   (ownership of a patent does not support the assertion of personal jurisdiction over a foreign patentee in

6   California).

7           Courts routinely find that passive conduct fails to meet the purposeful direction test.  For

8   example, hosting a passive website is not sufficient to establish purposeful direction. *See, e.g.,*

9   *Cybersell,* 130 F.3d at 420 (trademark infringement over the internet on a passive website is not

10  sufficient to support personal jurisdiction); *Pebble Beach,* 453 F.3d at 1158 (same).  Ownership of a

11  domain name by itself is also insufficient. *Pebble Beach,* 453 F.3d at 1159.  National advertising also

12  cannot constitute purposeful direction. *See Williams,* 432 F. Supp. at 380; *Cascade Corp. v. Hiab-*

13  *Foco AB,* 619 F.2d 36, 37 (9th Cir. 1980) (advertising in a national publication with circulation in the

14  forum state does not support personal jurisdiction).  Listing stock on various exchanges in the United

15  States is insufficient to establish personal jurisdiction. *Unocal Corp.,* 248 F.3d at 922.  Hence,

16  trademark ownership is not a contact that subjects SCEE to specific personal jurisdiction in California.

17          Nor has SCEE purposefully directed or expressly aimed any act at California by owning and

18  filing intent-to-use applications.  Foreseeable effects on the forum state are insufficient; instead, the

19  Ninth Circuit mandates that the plaintiff show the defendant directed its act intentionally at the forum

20  state to meet the "express aiming" requirement for purposeful direction. *Schwarzenegger,* 374 F.3d at

21  807.  Moreover, for the "express aiming" requirement, the defendant's purpose may be considered but

22  not the results, not even the most direct or intended results. *Id.* at 806-07.  Thus, even when a

23  defendant's acts caused harm to Mr. Schwarzenegger in California where he resides, the Ninth Circuit

24  held that personal jurisdiction was lacking because the defendant had not expressly aimed its act at

25  California by circulating advertisements in Ohio using images of Arnold Schwarzenegger. *Id.* at 807;

26  *see also Pebble Beach,*453 F.3d at 1157.

27          As in *Schwarzenegger,* it would be improper to find purposeful direction simply because

28  SCEE's acts of filing intent-to use applications are said to have consequences in California where

— 10 —

1   Plaintiffs reside. SCEE's acts of filing intent-to-use applications at the USPTO in Virginia were not

2   expressly aimed at California. SCEE developed the "BUZZ!" trademarks for use originally in Europe,

3   Middle East, Africa and Oceania. (Andall Decl. ¶ 20.) To protect its trademarks, SCEE filed

4   trademark applications for "BUZZ!" first in Europe and then other parts of the world. (Andall Decl.

5   ¶ 20.) By filing intent-to-use applications in the United States, SCEE only preserved its trademark

6   rights that SCEE already had created outside the United States. Such good-faith effort to protect its

7   trademark rights does not subject SCEE to personal jurisdiction. *See Bancroft & Masters*, 223 F.3d at

8   1089 (the "effects" test is not met if the defendant acted reasonably and in good faith to protect its

9   trademark) (concurrence opinion by Judge Sneed and joined by Judge Trott). Moreover, filing

10  applications at the USPTO that could provide rights in the United States cannot be considered an act

11  that is specifically targeted at California. *Cf. Unocal Corp.*, 248 F.3d at 922 (listing stock on a United

12  States exchange is not sufficient to exercise personal jurisdiction).

13

14             **b)**    **SCEA's Presence and Activities in California Are Not SCEE's**
                       **Activities For Purposes of Personal Jurisdiction**

15         Similar to the analysis for general jurisdiction discussed above, SCEE cannot be subject to

16  specific personal jurisdiction in California based on SCEA's presence and activities in California.

17  Courts have refused to exercise specific personal jurisdiction over a non-resident affiliated company

18  or a licensor merely because an affiliate or licensee was located in the forum state or conducted

19  activities in the forum state.[3] Plaintiffs allege that SCEA has a business address in California and that

---

20  [3]    *See, e.g., Holland Am. Line*, 485 F.3d at 459 ("where a parent and a subsidiary are separate and

21  distinct corporate entities, the presence of one ... in a forum state may not be attributed to the other");
    *A.T.&T.*, 94 F.3d at 591; *Red Wing Shoe*, 148 F.3d at 1361 (the defendant's "licensees have extensive

22  contacts with [the forum state], but this additional factor is also insufficient to submit [the non-resident
    defendant] to personal jurisdiction in the state"); *Rano*, 987 F.2d at 588 (9th Cir. 1993) (rejecting

23  purposeful availment based on the copyright licensee's profits from the plaintiff's photographs that the
    licensee knew would eventually be distributed in California); *Williams*, 432 F. Supp. at 380-81

24  (refusing to exercise personal jurisdiction over a trademark owner based on a licensing agreement it

25  had with U.S. companies that had numerous contacts with California); *Dex Prods., Inc. v.
    Houghteling*, No. C 05-05126 SI, 2006 WL 1751903, at *3 (N.D. Cal. Jun. 23, 2006) (refusing to

26  exercise personal jurisdiction over a licensor of patent rights used in California where the plaintiff did
    not show that the licensor had any involvement with the licensee's decision to sell the product in

27  California); *F. Hoffman-La Roche*, 130 Cal. App. 4th at 802-03 (contacts of U.S. companies could not

28  be attributed to Swiss affiliates where there was no evidence of control of day-to-day operations).

1    SCEA sells and promotes allegedly infringing products in California. Plaintiffs cannot conflate the

2    two separate companies of SCEE and SCEA. SCEA most definitely is not SCEE's alter ego.

3            Moreover, even assuming arguendo that SCEE receives a financial benefit 0from SCEA's use

4    of "BUZZ!" trademarks, mere receipt of financial benefits from an affiliated company or even a

5    licensee is insufficient to subject the recipient to personal jurisdiction. *See Rano*, 987 F.2d at 588; *Red*

6    *Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361-62 (Fed. Cir. 1998) (citing

7    *World-Wide Volkswagen*, 444 U.S. at 299). If financial benefit was the test, then every trademark

8    owner or licensor would be amenable to personal jurisdiction in every state in which their trademark

9    or licensed right was exercised. *Rano*, 987 F.2d at 588 (rejecting the plaintiff's argument that profit

10   from a copyright license would be sufficient for personal jurisdiction because such argument "if

11   accepted, would render [the licensor] and other foreign owners of art who sell their products to

12   publications, amenable to personal jurisdiction in every state in which their art eventually is

13   displayed."). Hence, SCEE cannot be subject to specific personal jurisdiction based on SCEA's

14   location and activities in California.

15
              c)    **Owning a Promotional Website Does Not Constitute An Act**
16                  **Purposefully Directed at California**

17           Contrary to what Plaintiffs alleged in the First Amended Complaint, SCEE has never promoted

18   or advertised the allegedly infringing products on <http://www.us.playstation.com>[4] or in the United

19   States. SCEE hosts a different website, that does not allow consumers to purchase any of SCEE's

20   products; SCEE's website merely provides information about SCEE's products for the countries in the

21   EMAO territory. Alleged trademark infringement based on the alleged use of the plaintiff's trademark

22   on a passive website is insufficient to establish purposeful direction. *Cybersell*, 130 F.3d at 420; *see*

23   *also Pebble Beach*, 453 F.3d at 1158. The Ninth Circuit specifically warned that finding personal

24   jurisdiction in similar circumstances would allow "every complaint arising out of alleged trademark

25   infringement on the Internet would automatically result in personal jurisdiction wherever the

26   plaintiff's principal place of business is located." *Cybersell*, 130 F.3d at 420. Plaintiffs' potential

27   ─────────────────────

28   [4] This website does not allow consumers to purchase products online. (Cahn Decl. ¶ 3.)

─ 12 ─

1    theories to support personal jurisdiction would do exactly what the Ninth Circuit forewarned and

2    prohibited – making the foreign owners of allegedly confusing or similar mark subject to personal

3    jurisdiction wherever plaintiffs are located.  That should not be allowed.

**2.    Plaintiffs Cannot Establish the "Arise Out Of" Requirement For Specific
Personal Jurisdiction**

6    Even if Plaintiffs could establish purposeful availment or purposeful direction (which they

7    cannot), Plaintiffs still cannot show that their claims arise out of or result from any activity in

8    California by SCEE.  The Ninth Circuit applies a "but for" test to determine whether a given cause of

9    action arises out of the defendant's forum-related activities.  *Unocal Corp.*, 248 F.3d at 924.  All of

10   Plaintiffs' claims purport to arise out of allegedly infringing sales of goods in the United States.  (FAC

11   at 1, 8, 10-12.)  For all of Plaintiffs' claims, Plaintiffs allege that "Defendants" (without specifying

12   which defendant) "used and are using the BUZZ Marks" and that the "goods and services offered

13   and/or sold by Defendants … are moving and will continue to move through the same channels of

14   trade."  (FAC ¶¶ 47, 48; *see also Id.* ¶¶ 67, 72, 76.)   However, SCEE has never sold nor offered to sell

15   any goods or services in California or the United States.  (Andall Decl. ¶ 6.)  SCEE also does not

16   manufacture, solicit sales, promote, advertise or market the "BUZZ!" marks or its versions of the

17   video game software in California.  (*Id.* ¶¶ 6, 14-16.)  Thus, Plaintiffs have not alleged and cannot

18   show any California-related activities by SCEE out of which their trademark claims arise.

**3.    Asserting Personal Jurisdiction over SCEE Would Be Unreasonable Here**

20   Even if purposeful availment were shown, it still must be shown that it is reasonable to subject

21   SCEE to personal jurisdiction in California.  Determining reasonableness turns on seven factors:

22   (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on

23   the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the

24   defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient

25   judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in

26   convenient and effective relief; and (7) the existence of an alternative forum.  *World-Wide*

27   *Volkswagen*, 444 U.S. at 292.  None of the factors is dispositive in itself; the Court must balance all

28   seven.  *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993).  These factors

– 13 –

1    mandate the conclusion that exercising specific personal jurisdiction over SCEE in California would

2    be unreasonable.

3       As discussed above, the first factor weighs heavily against personal jurisdiction because SCEE

4    did not purposefully avail or direct any activities at California.  Second, the burden on SCEE would be

5    substantial since SCEE is a UK company and has no presence in California.  The third factor is neutral

6    because any sovereignty conflicts are best resolved through choice-of-law analysis.  The fourth factor

7    likewise is neutral because California has no special interest in Plaintiffs' claims, which are national in

8    scope.  California has expressed reservations about assuming jurisdiction when the forum activities

9    with the non-resident are insubstantial.  *See Floyd J. Harkness Co. v. Amezcua*, 60 Cal. App. 3d 687,

10   694 (1976).  The fifth and seventh factors weigh against jurisdiction because SCEA will remain in the

11   case and, in the unlikely event that Plaintiffs prevail, they would be able to obtain relief against SCEA.

12   Courts have given little, if any, weight to the sixth factor.  *See Core-Vent*, 11 F.3d at 1490 ("neither

13   the Supreme Court nor our court has given much weight to inconvenience to the plaintiff").  Hence, it

14   also is unreasonable for SCEE to be subject to personal jurisdiction in California.

15      **D.**     **Plaintiffs Failed To Serve SCEE In a Manner Prescribed by Rule 4(h)(2)**

16       Plaintiffs' First Amended Complaint also should be dismissed because Plaintiffs failed to

17   properly serve SCEE with the First Amended Complaint.  *See* Fed. R. Civ. P. 12(b)(5).  Plaintiffs

18   attempted to serve SCEE twice:  (1) personal delivery and (2) by regular international mail.  As to the

19   second, the Ninth Circuit has held that regular international mail to England is not proper service.

20   *Brockmeyer v. May*, 383 F.3d 798, 806-07 (9th Cir. 2004).  Therefore, Plaintiffs' attempted service of

21   SCEE via regular mail does not constitute proper service.

22       The Ninth Circuit has not addressed the propriety of personal delivery to a foreign corporation

23   sitting outside the United States.  Federal Rule of Civil Procedure 4(h)(2) requires foreign

24   corporations to be served according to the means in Rule 4(f) for serving individuals "except *personal*

25   *delivery* under (f)(2)(C)(i)."  Fed. R. Civ. P. 4(h)(2) (emphasis added).  In other words, the statute

26   plainly *prohibits* personal delivery as a form of proper service on foreign corporations located abroad.

27   This ban on personal delivery under Rule 4(f)(2)(C)(i) has been interpreted to ban all personal

28   delivery on foreign corporations.  *See Prewitt Enter., Inc. v. Org. of Petroleum Exporting Countries*,

– 14 –

1   353 F.3d 916, 922 (11th Cir. 2003); *Emery v. Wood Indus., Inc.*, No. 98-480-M, 2001 U.S. Dist.

2   LEXIS 1016, at *6 (D.N.H. Jan. 17, 2001). Hence, Plaintiffs' attempted service of SCEE by personal

3   delivery was improper.

4   **IV.    CONCLUSION**

5       SCEE does not manufacture, sell, offer for sell, export or market the allegedly infringing

6   products in California or elsewhere in the United States. Plaintiffs have not alleged and cannot show

7   sufficient contacts to warrant exercise of personal jurisdiction. Plaintiffs also cannot show they

8   properly served SCEE. Consequently, SCEE respectfully requests the Court to grant its motion to

9   dismiss for lack of personal jurisdiction and insufficiency of service of process.

11  DATED: May 22, 2008                         Respectfully submitted,

12                                              TOWNSEND AND TOWNSEND AND CREW LLP

14                                              By: /s/ Timothy R. Cahn
                                                    JAMES G. GILLILAND, JR. (State Bar No. 107988)
15                                                  jggilliand@townsend.com
                                                    TIMOTHY R. CAHN (State Bar No. 162136)
16                                                  trcahn@townsend.com
                                                    MEGAN M. CHUNG (State Bar No. 232044)
17                                                  mmchung@townsend.comTimothy R. Cahn

18                                              Attorneys for Defendant
                                                SONY COMPUTER ENTERTAINMENT EUROPE LTD.

20  61377777 v1